**244 A.2d 864.**

Robert W. Allen *vs.* D'Ercole Construction Co., Inc.

Helen E. Allen *vs.* D'Ercole Construction Co., Inc.

Robert W. Allen *vs.* Angelo A. D'Ercole.

Helen E. Allen *vs.* Angelo A. D'Ercole.

JULY 25, 1968.

Present: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

JOSLIN, J. These four actions of trepass on the case for negligence were brought by a husband and wife. Although commenced prior to the adoption by the superior court of its new rules of civil procedure, the cases were tried subsequent to their effective date. The wife seeks damages for personal injuries sustained as a result of an alleged collision between a motor vehicle owned by her husband and operated by her and one belonging to the corporate defendant and operated by its employee, the individual defendant. The husband sues for property and consequential damages. All the cases were consolidated and were tried to a judge and jury in the superior court. The jury returned a general verdict for each defendant, and even though they did not reach unanimous agreement on a special interrogatory, judgment was entered for each defendant. Plaintiffs now appeal and urge that the trial justice should not have entered judgments against them without first resubmitting the cases to the jury for further consideration, that he should have granted their motions for new trials, and that he also erred in ruling on evidentiary questions and in refusing to grant their requests to charge. Although we discuss only the case of the wife against the individual defendant, what we say in connection with it will be dispositive of all cases.

The facts may be briefly stated. On January 17, 1963, plaintiff attended a testimonial dinner at a country club in Cranston and left there for her home at about midnight. A

freezing rain had made the roads slick and icy. She was proceeding on a narrow winding road at a speed of between 12 and 15 miles per hour when, as she came to a curve in the road, her car went into a slight slide. She recovered from that skid and about 200 feet further along the road she testified that she felt "* * * this tremendous push that came from behind and sent the car, kept pushing the car, and it accelerated in speed, and it sent, it just, it seemed to go in all directions * * * the car just went diagonally across, bumped along, and slammed into a tree."

The defendant's story differs only as it relates to the impact between the two vehicles. He was driving behind plaintiff and proceeding at about the same rate of speed. As he rounded the curve, he observed that she was skidding and that she was "***going from left to right and it appeared as though the car was completely out of control." He applied his brakes, but to no avail. He went into a skid and struck plaintiff's automobile in the rear, but not until after it had struck the tree.

## I

At the close of the testimony, the trial justice charged the jury on the law, and then, in submitting the case, further instructed them not only to return a general verdict, but to answer as well the interrogatory: "Did the vehicle, which Mrs. Allen was operating, hit the tree before being struck by the defendants' vehicle?" It was submitted pursuant to rule 49(b) of the superior court rules of civil procedure which reads:

"The court may submit to the jury, together with instructions for a general verdict, written interrogatories upon one or more issues of fact the decision of which is necessary to a verdict. The issues to be submitted to the jury shall be settled by the court before the commencement of closing arguments. The court shall give such explanation or instruction as may be necessary to enable the jury both to make answers to the interrogatories and to render a general verdict, and

the court shall direct the jury both to make written answers and to render a general verdict. When the general verdict and the answers are harmonious, the appropriate judgment upon the verdict and answers shall be entered pursuant to Rule 58. When the answers are inconsistent with each other or one or more is inconsistent with the general verdict, judgment shall not be entered, but the court shall return the jury for further consideration of its answers and verdict or shall order a new trial."

The jury then retired to deliberate and after being out approximately three hours advised the trial justice that they had reached a general verdict and inquired whether it was necessary that they "* * * answer the defendant's interrogatory Yes or No?" After advising counsel of the inquiry, the trial justice directed them to "Answer each Yes or No." About 15 minutes later, they returned a general verdict for defendant, and also reported a disagreement on the interrogatory, ten jurors answering the question affirmatively and two negatively. The trial justice thereupon stated that he did not find the answer to the interrogatory inconsistent with the general verdict and then ordered judgment to enter for defendant.

At the trial, when the jury returned their general verdict and reported on their inability to agree on an answer to the interrogatory, plaintiff did not move to resubmit the case for further consideration. Neither did she object to entry of judgment against her. Now, however, she argues that, faced with inconsistent findings, the trial justice should not have summarily ordered judgment to enter, but should instead either then and there have returned the case to the jury for further consideration, or thereafter granted her motion for a new trial.

The defendant argues, and with considerable merit, that plaintiff waived her right to challenge on the ground of inconsistency by failing either to make timely objection to the entry of the judgment or to move promptly for a re-

submission when the jury reported their inability to agree on an answer to the interrogatory. *Employers Casualty Co. v. Dupaquier,* 338 F.2d 336.

Rather than decide the case on the waiver issue, however, we go to the more basic problem of what effect the jury's inability to reach agreement on an answer to the interrogatory had upon their general verdict. That problem is but one facet of the broader question of what should be done when there is an inconsistency between a general verdict and the answer to an interrogatory. We say that is but an aspect of the broad problem because for testing purposes the same inconsistency would exist irrespective of whether all the jurors had answered negatively or whether, as in this case, they divided on their answer.

An apparent inconsistency between the findings, however, is not enough, and it is only when the two are materially inconsistent, that is, when they cannot be harmonized, that the general verdict will not support a judgment. *Safeway Stores, Inc.* v. *Dial,* 311 F.2d 595; *R. B. Company* v. *Aetna Ins. Co.,* 299 F.2d 753; *McVey* v. *Phillips Petroleum Co.,* 288 F.2d 53. Phrased differently, "It is only where the answer to the interrogatory which is inconsistent with the verdict relates to a material factual issue which the jury must necessarily have decided in reaching its verdict that the verdict need give way." 2B Barron & Holtzoff, *Federal Practice & Procedure,* §1059, p. 360.

More precisely then, the problem is not whether the general and special findings are prima facie inconsistent, but whether they are so materially inconsistent that the general verdict must yield. In deciding whether there is such an inconsistency, all reasonable attempts must be made to harmonize the answer to the ultimate question with that given to the testing question. The latter will control only where the "* * * conflict on a material question is beyond reconciliation on any reasonable theory consistent with the

evidence and its fair inferences." In the reconciliation process, moreover, "* * * every reasonable intendment in favor of the general verdict should be indulged in an effort to harmonize it with the answers." 2B Barron & Holtzoff, *Federal Practice & Procedure,* §1059, p. 358. See also 5 *Moore's Federal Practice* (2d ed.) ¶49.04, p. 2211; *Gallick v. Baltimore & Ohio R. R.,* 372 U. S. 108, 83 S. Ct. 659, 9 L. Ed.2d 618; *Theurer v. Holland Furnance Co.,* 124 F.2d 494; *Mayer v. Petzelt,* 311 F.2d 601; *Bass v. Dehner,* 103 F.2d 28; *Golden North Airways, Inc. v. Tanana Publishing Co.,* 218 F.2d 612; *Waterman Steamship Corp. v. David,* 353 F.2d 660.

It is begging the question for plaintiff to argue that the trial justice would not have submitted the interrogatory to the jury unless its answer would effectively test the general verdict, and that therefore their failure to agree on an answer was necessarily equivalent to a material inconsistency. That argument presupposes either unerring judgment by trial justices in the submission of interrogatories or a rule of law that an inconsistency between the answer to an interrogatory erroneously submitted and a general verdict must of necessity be deemed material. Such a supposition is untenable both factually and legally. While the rule may be that an interrogatory which does not necessarily test the general verdict should not be submitted, an original error in submission will not excuse the trial justice from the obligation of reexamining, if there be an apparent inconsistency in findings, in an attempt to reconcile and to determine materiality. 2B Barron & Holtzoff, *Federal Practice & Procedure, supra,* at 360-61.

In this case the trial justice when he submitted the interrogatory said that it went "* * * to one real vital issue of fact in this case." He concluded otherwise, however, after the jury reported their disagreement on the special interrogatory. Then, his thinking was that there could have been

"* * * disagreement among the jury as to the exact sequence here and yet unanimity as to the general verdict * * *." Expanding on that thought in his decision on the motion for a new trial, he said that the jury, notwithstanding their divergence of opinion on whether the plaintiff "* * * was first rear-ended by the defendant or not * * *," could still have returned a general verdict for defendant.

The foundation for his comments undoubtedly lies in the very real possibility that in the light of all the circumstances the jury could have found that plaintiff was contributorily negligent or that defendant was not negligent. Irrespective of how the accident happened and without regard to whether the two vehicles collided before or after plaintiff struck the tree, either a finding that defendant was in the exercise of due care or that plaintiff was not would support the general verdict. The jury's failure to agree on an answer to the interrogatory did not, therefore, clearly exclude every reasonable ground upon which the general verdict might rest. In the circumstances, their disagreement on the testing question was not irreconcilable with and did not, therefore, vitiate the general verdict.

## II

The evidentiary rulings, assigned by plaintiff as error, concern the testimony of plaintiff's attending physician. He was called as her witness and during cross-examination denied that she had ever told him that "* * * she had skidded on a piece of ice and hit a tree and then another car hit her car." The witness was then shown two documents. Both were medical report questionnaires and inquired, concerning the case history, how the injury had been sustained, and the diagnosis, treatment and prognosis. One had been sent to the doctor by the medical payments insurance carrier on the vehicle plaintiff was operating, and the other on behalf of the defendant. The doctor responded to each in his own handwriting, and each bore his signature. On one in answer

to the question "How did patient say injury occurred?" he wrote, "She skidded on a piece of ice, and hit a tree, and then another car hit her car"; and on the other, responding to the inquiry "State in patient's own words where and how accident occurred," he wrote "Pt. [patient] states she was driving alone, skidded on ice patch, hit tree, and then another car hit hers, she hit the steering wheel, and blanked out." Although the doctor thereafter testified that the history he gave of how the accident occurred was obtained from the hospital records, rather than directly from plaintiff, on recross-examination he admitted that the hospital records[1] said nothing about plaintiff having been hit by another car.

The plaintiff now argues that any statements concerning the history of the accident appearing on the medical forms were hearsay and therefore inadmissible. Her argument misconceives the nature of the rule prohibiting the use of hearsay. While it prohibits the admission of extra-judicial utterances which are offered as credible testimonial assertions, it is not directed against statements which are not offered to establish the truth of the matters asserted therein. McCormick, *Law of Evidence* §225, p. 460; 5 Wigmore, *Evidence* (3d ed.) §1361, pp. 2, 3. Evidence of a witness's prior inconsistent statement or of his previous self-contradictions obviously fall into the second category because, as Professor Wigmore says:

> "* * * we are not asked to believe his prior statement as testimony, and we do not have to choose between the two (as we do choose in the case of ordinary contradictions by other witnesses). We simply set the two against each other, perceive that both cannot be correct, and immediately conclude that he has erred in

---

[1]The hospital record reads:

"Last night pt [patient] was driving, and skidded on the ice and hit the tree. She apparently did not lose her consciousness but remembers the thing vaguely that she hit the steering wheel and felt pain in her face. Was brought to the hospital."

one or the other,—but without determining which one."
3 Wigmore, *Evidence* (3d ed.) §1018, p. 687.

The use of the doctor's prior inconsistent statements to discredit the testimony he gave at trial was not, therefore, "obnoxious to the Hearsay Rule." Wigmore, *supra,* §1018, p. 687. If plaintiff's concern was that the jury might have considered the doctor's out-of-court statements for their substantive value, rather than as neutralizing or impeaching his at-trial testimony, she should have requested a cautionary instruction. *State* v. *Quattrocchi,* 103 R. I. 115, 235 A.2d 99.

### III

On the last day of the trial plaintiff presented the trial justice with 42 requests to charge. They were typed, single spaced, on 12 pages of legal size paper. When asked at the close of the evidence whether he was going to urge that all of the requests be granted, plaintiff's counsel replied that he was waiving only three and was insisting upon the remaining 39. Thereupon, the trial justice stated that even to read the requests to the jury would take longer than his "* * * whole charge to the jury, or probably about as long," and that because he was being imposed upon he would refuse even to read the requests or to take them seriously. The plaintiff's objection was duly noted.

After the court had instructed the jury, the plaintiff's attorney again addressed the court saying "* * * plaintiffs object to the failure of the court to charge plaintiffs' requests number 1, 2, 3, 4, 5, 6, 8, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, and 20, 21, 22, 23, 25, 26, 27, 28, 29, 30, 31, 32 — strike 32, 34, 35, 36, 37, the amended portion of 38, 42." The objection was duly noted and the trial justice was once again prompted to say that he had "* * * made it abundantly clear for the record yesterday that I think that the submission of forty-two requests to charge on twelve legal-sized sheets, single-spaced, is an imposition on the court. I could be dead wrong,

but my theory or my concept of requests to charge is counsel helping and aiding the court to give a fair charge in certain areas — not boiler-plate stuff, but certain areas where the court would welcome help and where counsel, in discharging a duty to his client, would want to sharpen up an instruction. But, as I say, I think it was an imposition. I refused to read them * * *."

The error plaintiff assigns is to the trial justice's refusal to read his requests. Substantively, however, her contention is addressed, not to the refusal to read, but to the refusal to charge. This is necessarily so because refusing to read requests, although a practice we do not encourage, is prejudicial only if the requests are well grounded. While this alone would suffice to dispose of plaintiff's argument, we go further and consider that she argued in addition that the trial justice was in error in refusing to charge as requested.

Apart from the objection which in *Faccenda* v. *Rhode Island Co.*, 43 R. I. 199, 110 A. 601, we made clear inheres in presenting an unreasonable number of unnecessary requests in a case such as this where the issues are few and simple, plaintiff's assignment of error fails because of non-compliance with rule 51(b) of the superior court's rules of civil procedure. That rule provides that a refusal to charge may not be assigned as error unless the party whose requests have been denied has distinctly stated the grounds of his objections.[2]

In construing that rule the courts have said that its purpose "* * * is to afford the trial judge an opportunity upon second thought, and before it is too late, to correct any in-

---

[2]Rule 51(b) in pertinent part provides that:

"At the close of the evidence or at such earlier time during the trial as the court reasonably directs, any party may file written requests that the court instruct the jury on the law as set forth in the requests. No party may assign as error the giving or the failure to give an instruction unless he objects * * *, stating distinctly the matter to which he objects and the grounds of his objection."

advertent or erroneous failure to charge," *Marshall* v. *Nugent,* 222 F.2d 604, 615, and that the objection, if it is to merit consideration, "* * * must be sufficiently specific to bring into focus the precise nature of the alleged error." *Palmer* v. *Hoffman,* 318 U. S. 109, 119, 63 S. Ct. 477, 483, 87 L. Ed. 645, 653. See also *Johnson* v. *Chesapeake & Ohio Ry.,* 227 F.2d 858.

In this case plaintiff's general objection hardly satisfied the requirement of specificity; neither did it in any way give the trial justice the benefit of counsel's views so that, if impressed thereby, he might have made a necessary change in what he had instructed the jury.

In a similar situation where trial counsel had made a general objection to the trial justice's refusal to charge as contained in 51 requests for instructions, the Court of Appeals, First Circuit, found that the objection had not been properly preserved because,

> "It did not state distinctly the matter to which he objected and the grounds of his objection as required by the rule. The objection was not 'sufficiently specific to bring into focus the precise nature of the alleged error' and failed to show the court 'distinctly' which of the large number of requests had not been substantially embodied in the charge. * * *" *Charles A. Wright, Inc.* v. *F. D. Rich Co.,* 354 F.2d 710, 713.

Upon similar grounds we hold that the trial justice's refusal to give the plaintiff's requested instructions was not reversible error.

The plaintiff's appeal in each case is denied and dismissed.

*Robert R. Afflick,* for plaintiffs.

*Gunning & LaFazia, Raymond A. LaFazia and John F. McDonough,* for defendants.