255 A.2d 158.

THE HOUSING AUTHORITY OF THE CITY OF WOONSOCKET RHODE ISLAND *vs.* FLORIMOND A. ALLARD *et ux.*

JULY 8, 1969.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

8

KELLEHER, J. This is a civil action brought by the plaintiff public housing authority for possession of an apartment located in one of the housing developments it operates within the city of Woonsocket. This suit was originally commenced in the twelfth district court which found for the plaintiff. The defendants took an appeal to the superior court and claimed a jury trial. The jury returned verdicts for the plaintiff for possession and costs and a $50 counsel fee. Judgments were entered upon the verdict and the defendants have prosecuted their appeal to this court.

The defendants are husband and wife. At the time of the

superior court trial, Mr. Allard was 72 years of age. His wife, he said, was 64. In 1966 the Allards were tenants of plaintiff in a low-rent housing facility located in the Morin Heights section of Woonsocket. On June 2, 1967, they filed an application for admittance to another development called John F. Kennedy Manor. Kennedy Manor was devoted exclusively to affording housing for the elderly. In their application, defendants listed as their sole income a small amount of interest on their savings account and their monthly social security benefits.

On November 8, 1967, the Allards were summoned to the housing authority's office for an updating of their pending application. In the record is a statement signed by Mr. Allard which said that there were no changes in their June 2 application. It is conceded, however, that in late September 1967, Mrs. Allard began to work at a local textile plant. She was employed as a part-time employee until December 11, 1967. Her total income for this period of time was $622.[1] On December 20, 1967, the parties executed a lease for an apartment in Kennedy Manor and the Allards moved into their new quarters the same day. Within a week, they were summoned to the office and asked about the wife's part-time employment. Thereafter, on January 12, 1968, the Allards met with the members of the housing authority. The minutes of that meeting state that "The record indicated that Mr. Allard's application contained false and inaccurate information and that for all intents and purposes had the truth been known, Mr. Allard would not have become a tenant at Kennedy Manor." Two weeks later, the members recommended and authorized the institution of this suit.

At the trial in the superior court, plaintiff's executive director testified that government regulations permitted

---

[1] In discussing the Allards' finances, we have used round figures rather than carrying the sums mentioned out to the final penny.

any family occupying a unit at Kennedy Manor to earn up to $3500 a year. The Allards' annual income from their social security payments is $2107. While the $622 earned by Mrs. Allard left defendants far short of the critical $3500 figure, the director explained that the "regional office" had a formula whereby the $622 was projected over a 12-month period and this bit of mathematical magic pushed the Allards beyond the accepted income limit.

The Allards have maintained that they had not mentioned the part-time work of the wife at the time their application was rechecked on November 8 because they assumed that Kennedy Manor operated under the same system in force at the Morin Heights development. At Morin Heights a family could earn up to $600 beyond their social security income without any official action by the authority. Once the income rose above $600, the monthly rent was increased. In fact, the record shows that sometime after December 20, 1967, the Allards received a bill from the authority for a retroactive increase in the rent charged them for their occupancy of an apartment at Morin Heights.

Mrs. Allard testified that in early December she told an employee of the authority that she was employed part time at the textile plant and that the authority could obtain any information it desired by contacting her employer. This statement was uncontradicted.

The lease entered into by the parties provided in pertinent part that it would be terminated if it had been executed on the basis of any material misrepresentations made in the application. The relevant language thereof reads as follows:

"* * * or in the event of misrepresentation of any material fact contained in Tenant's application for these premises or contained in any statement submitted to the Management by the Tenant at any time, then, in case any of such events, this lease shall be automatically terminated without further notice, and the Ten-

ant agrees that the Management shall be entitled to immediate possession of said premises without any previous demand or notice whatever."

In its complaint, the housing authority alleged that there had been a material misrepresentation made by defendants relative to their income when they applied for admittance to Kennedy Manor and that they would not have become its tenants except for this misrepresentation. Here, defendants claim that the trial justice erred in his charge to the jury because in reviewing the evidence he unduly emphasized the testimony adduced by plaintiff. We find merit in this contention.

In his charge, the trial justice was under the misconception that the lease was executed on November 8, 1967. At one point he told the jury:

"If you decide the fair preponderance of the evidence here indicates to you that on November 8, 1968, [sic][2] the defendants were, or either were asked as to whether they had any other additional income than that of June 7th, and they did not disclose it, they would be guilty of misrepresentation. On the other hand, if they were not asked that, as the defendants claim they weren't, they would not be guilty of misrepresentation, and that is the crucial issue in this case as to exactly what happened on November 8, 1967, because at that time the plaintiff, as it alleges, in reliance upon that statement made, gave them a release."[3]

In other portions of his charge, the trial court again stated that November 8 was the critical date and also referred to the question as to whether defendants had made a false misrepresentation. When the trial justice concluded the charge, defense counsel pointed out that the court was mistaken as to the time of the execution of the lease. The

[2]The trial justice was in obvious error in referring to 1968. The year in question in this case is 1967, not 1968.

[3]The use of the word release is an obvious slip of the tongue. The trial justice was actually referring to the December lease.

trial judge acknowledged that he had erred. Counsel then pointed out that the court had failed to comment on what had transpired between November 8 and December 20. The trial justice remarked that the jury could take into consideration "any other information" that it felt was "pertinent." The jury then retired and thereafter the court asked if there were any objections to his charge. It was at this juncture that defendants registered their objection to the court's undue emphasis on the events which occurred on November 8 and his complete failure to discuss what occurred between that date and the day the lease was executed.

It is clear from a reading of the record that the Allards' defense of this action was based on the ground that at the time the lease was executed on December 20, 1967, the authority was aware that Mrs. Allard had been working and the consequent change in the Allards' income.

Under our law, a trial justice is not authorized to express in his charge to the jury his own opinion on the evidence or to give his own characterization of any witness. *Pompei* v. *Cassetta,* 63 R. I. 74, 7 A.2d 198. Should he deem it proper to relate the evidence to a pertinent principle of law, his conduct should be governed by the following rule laid down in *Miller* v. *Bessette,* 80 R. I. 187, 94 A.2d 253:

> "Where it becomes necessary or advisable for the court to point up or summarize certain evidence in order to assist the jury in applying the law as given, the trial justice should exercise care to do so fairly to both parties. He should not mislead the jury as to the evidence or leave the clear impression that the court is deciding an issue of fact which is properly for their determination."

Here the trial had produced a controverted issue of fact. It was: whether defendants had made a false misrepresentation which resulted in the signing of the lease. The housing authority claimed that if they had known of Mrs. Allard's part-time job, the lease would not have been executed.

The Allards, however, allege that the authority was made aware of the wife's employment in early December and, despite this fact, the lease was signed. The trial justice, because of his misplaced preoccupation with the November 8 date, failed to mention the events which occurred subsequent to November 8 and prior to the true date of the lease. This omission, in our opinion, precluded the jury from considering the evidence offered by the Allards in defense to this action. It may have been that the jury, even if properly informed as to the evidence which favored the tenants, would have rejected it as unworthy of belief. However, they were never afforded the opportunity to do so. The trial court's charge in our opinion served to confuse the jury on a prime factual issue to the prejudice of defendants. A new trial must be ordered.

The plaintiff contends that defendants may not be heard to complain because of their failure to comply with Rule 51 (b) of the superior court rules of civil procedure. This rule states:

> "At the close of the evidence or at such earlier time during the trial as the court reasonably directs, any party may file written requests that the court instruct the jury on the law as set forth in the requests. No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection. Opportunity shall be given to make the objection out of the hearing of the jury."

The housing authority in urging that defendants are precluded from questioning the correctness of the superior court's charge points out that defendants' objection was made after the jury had retired from the courtroom to begin its deliberations. It also claims that defendants' objection lacked the required specificity. We find little merit in the authority's contention.

14

The purpose of Rule 51 is to call to the attention of the trial judge any omissions or mistakes in his charge in order that he may have an opportunity to correct them before the jury finally retires. 2B Barron & Holtzoff, *Federal Practice & Procedure*, §1101, p. 440; *Allen* v. *D'Ercole Const. Co.,* 104 R. I. 362, 244 A.2d 864. An analysis of this rule shows quite clearly that a jury should not begin its deliberations until the court has considered the merits of any objections made to his charge.

Here, the trial justice concluded his charge by saying "Take the case, Mr. Foreman, ladies and gentlemen, and when you have arrived upon a verdict, let the sheriff know and we will get together to take your verdict." The sheriff thereupon lead the panel out of the courtroom to the jury room. Then the court asked counsel if there were "Any exceptions desired to the charge?" The defendants made their objection.

Rule 51 is a two-way street. It requires counsel to have their objections noted before the jury leaves the courtroom to begin its deliberations and it imposes a duty on the trial justice to afford counsel an opportunity to have their objections noted to its charge before the jury's departure. This duty is implicit in that portion of the rule which states "Opportunity shall be given to make the objection out of the hearing of the jury." See *Jelinek* v. *Sotak,* 9 N. J. 19, 86 A.2d 684. We can see no reason why the defendants should be penalized by the trial court's failure to follow the mandate given it in Rule 51. We further believe that in the words of *Allen* v. *D'Ercole Const. Co., supra,* the defendants' objection was " 'sufficiently specific to bring into focus the precise nature of the alleged error.' "

The defendants' appeal is sustained, the judgments ap-

pealed from are vacated and the case is remitted to the superior court for a new trial.

*Omer A. Sutherland,* for plaintiff.

*Fred Israel,* for defendants.