273 A.2d 855.

STELLA GIORDIANO *vs.* UNIROYAL, INC.

FEBRUARY 26, 1971.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

KELLEHER, J. This is an original petition for workmen's compensation. After a hearing before the trial commissioner, a decree was entered ordering payment of total incapacity benefits. The employer took an appeal to the full commission. The full commission with one member dissenting affirmed the trial commissioner's finding and an appropriate decree was entered. Thereafter, the employer prosecuted this appeal.

In 1969, Uniroyal operated a large plant in Woonsocket where it employed many persons in the manufacture of rubber and canvas footwear. Stella Giordiano worked at this plant as a stitcher. She testified that on September 3, 1969, she struck her right elbow on an iron box which extended out from under her sewing machine sustaining what her physician described as a pinched nerve in her neck. Stella went to the plant hospital where the nurse on duty gave her medication to alleviate the pain. She saw the plant physician and remained on the job for a portion of the day. The intensity of her pain caused Stella to leave work. A few days later she saw an orthopedic surgeon who later testified in her behalf. The instant petition was filed with the commission on November 4, 1969.

At the hearing before the trial commissioner the surgeon stated that his patient's pinched nerve was related to her elbow striking the iron box. He conceded that his diagnosis was based on the history as given him by Stella. The doctor said that if this history was not true, then he would have to change his diagnosis. Stella insists that she gave the same history of her injury to the plant nurse as she did to her physician.

The plant nurse then assumed the witness stand. The employer attempted to show from its hospital records and nurse's notes that on three different occasions during the month of June and on September 3, 1969, Stella came to the hospital for the treatment of pain which she attributed to causes other than her elbow hitting the iron box. The employee's objections to the questions asked the nurse were sustained. The employer then made an offer of proof in which it alleged, that its nurse, if allowed to testify, would show that when Stella appeared at the hospital during the months already referred to, she said her pain and discomfort which she was experiencing was due to her lifting work baskets and that at no time did she relate her pain to her elbow

hitting the box. The trial commissioner in rejecting the employer's offer based his rejection upon the requirements of G. L. 1956 (1969 Reenactment) §28-35-10, as amended by P. L. 1969, chap. 123.[1] (See appendix).

In essence, this statute, so far as it is pertinent to the instant petition, provides that if an employer, his insurer or anyone on their behalf, obtains from an injured employee any paper, document, report, statement or agreement "concerning compensation" an exact duplicate copy thereof shall be furnished to the employee at the time it is obtained. It matters not whether the statement is signed or unsigned or how the document was obtained, the requisite copy must be given to the employee. The statute also declares that if the statute has not been strictly complied with, then the report or anything contained therein may not be used as evidence in any compensation hearing.

The commission's affirmance of the trial commissioner's ruling presents us with a simple question of law. Does Stella's statements to the nurse fall within the proscriptive provisions of §28-35-10? We believe that they do.

The commission thought the language of the statute to be clear and unambiguous. While most of the statutory language is plain and distinct, there is one phrase which is ambiguous. The statute does not require that a duplicate of any paper, document, report, statement or agreement obtained from an injured employee be furnished to the declarant. This requirement applies only to those items which "concern compensation." In an attempt to determine what the Legislature was referring to when it used the words "concerning compensation," we shall review

---

[1]Chapter 123 became effective May 14, 1969. The nurse was permitted to testify as to what Stella told her when the employee visited the hospital on occasions prior to that date.

the historical development[2] of §28-35-10 and relate its terms to other comparable provisions of the Workmen's Compensation Act.

We shall begin our historical survey in the year 1954 when the Legislature completely revised the Workmen's Compensation Act with the enactment of P. L. 1954, chap. 3297. The following portion of sec. 1 of art. III of the *then* new act reads as follows:

> "Sec. 1. If the employer and the employee or those entitled to compensation on account of the death of an employee reach an agreement in regard to compensation under this chapter, a memorandum of such agreement signed by the parties shall be filed in the office of the director of labor, who shall forthwith docket the same in a book kept for that purpose. Where an employer, his insurer, or the subordinates of either request an injured employee to sign any paper, document, report, statement or agreement concerning compensation, such injured employee shall receive an exact duplicate original copy of such paper, document, report, statement or agreement which shall be signed by a duly authorized agent of the employer or his insurer."

Among the documents embraced within this section are preliminary and nonprejudicial agreements. They provide for the payment of benefits to the worker by his employer. There is also an agreement to suspend compensation whereby the worker and his employer acknowledge the receipt of compensation and agree to a discontinuance of payments.

---

[2]In a most interesting dissent the commission's chairman also traced the history of §28-35-10. He reached the conclusion that a worker was entitled to a duplicate of any of the items described in the statute only if he had filed a claim for benefits and after he had demanded that he be furnished with a copy of the information previously given. The chairman overlooked the import of the 1963 amendment when the Legislature declared that a copy was to be furnished "at the time the same is obtained" regardless of whether the employee had affixed his signature to the item in question.

When the General Laws were revised in 1956, sec. 1 of art. III was fragmented. The first sentence which dealt with the filing and docketing of signed compensation agreements became §28-35-1. The other portion concerning the supplying the employee with duplicate originals became §28-35-10.

Section 28-35-10 was amended in several details by the enactment of P. L. 1963, chap. 201. This new amendment deleted the word "request" and said that if a signed or unsigned paper, document, report, statement or agreement concerning compensation was obtained from an injured employee, he was thereupon to be furnished with a duplicate original of the proffered information. The Legislature also added the exclusionary provisions presently found in the statute.

This section, as it reads today, is the result of the 1969 amendment. In that year the General Assembly broadened the words "paper, document, report, statement or agreement" to include such items as hospital records, nurses' notes, personnel records and reports prepared by the worker's foremen or his other supervisors.

A few years ago (1966) in *Litchman* v. *Atlantic Tubing & Rubber Co.*, 100 R. I. 352, 216 A.2d 129, we ruled that the trial commissioner had erred in admitting into evidence the contents of a medical report which had not been furnished to the employee in accordance with §28-33-34. This statute, which is comparable to §28-35-10, requires an injured employee to submit to a physical examination given by his employer's physician but it also obligates the employer or its insurer, when it receives the examiner's report, to mail without undue delay a copy of the report to the employee. The statute states that failure to comply with this provision will, upon objection made by the employee, bar the use as evidence of either the report or the physician's testimony. In *Litchman,* the physician's

report was received by the employer July 10 or 11, 1964 and a copy was not sent to the employee until July 17, 1964. Earlier, in *Morton C. Tuttle Co.* v. *Carbone*, 84 R. I. 375, 125 A.2d 133, we observed that the Legislature in enacting §28-33-34 was attempting to insure that the injured worker would receive the results of his examination as fully and as promptly as his employer. So, too, with §28-35-10.

We think it is obvious from the amendments made to §28-35-10 that the Legislature was doing its best to put the employer and his injured employee on an equal footing. Section 28-35-10 represents a genuine legislative effort to guarantee a worker that, if and when he might seek compensation for what he believes to be a work-related injury, his employer was not to be in a superior position, information-wise, because of its ready access to its records and the investigative reports of its insurer made long before the compensation claim was filed. It must be remembered that compensation is paid for disability, not for injury. The disability may occur several years after the alleged injury. To us, it appears that the General Assembly by its enactment of §28-35-10 and its many subsequent revisions thereto was seeking to bar an employer or its insurer from using any cloak and dagger approach in the field of workmen's compensation. Rather it intended that, if information relative to a potential claim for compensation was obtained from an injured employee, he was to receive a copy of the material so that he could know exactly where he stood should the time ever come for a filing of a petition for benefits.

The key to the statute in question is the phrase "concerning compensation." We agree with Uniroyal that its medical staff is not required to furnish an employee with a statement of his complaint about a headache which the employee says is due to his over-indulgence with food or

drink the night before. However, what we do hold is that the statute contemplates that any time an employee reports to his employer or its representatives and makes a statement about any injury, disease or condition which is obviously work-related or which, in the opinion of the worker, is job-connected, then at that time he is entitled to the duplicate original described in the legislation. If the duplicate is not furnished, the exclusionary provisions of the section may come into play.

The fact that a worker volunteers the information does not negate his right to the duplicate. It is significant that the word "request" which first appeared in the statute was later omitted in favor of the word "obtains." When in 1963 the Legislature used the words "regardless of the mode of obtaining same," it was using the word "obtains" in its broadest sense. There is absolutely no necessity that a demand for information be made by the employer before the statute becomes operative. If the employer or insurer receives rather than seeks the information, they are bound by §28-35-10.

Applying the principles enunciated herein to the employer's offer of proof, it is obvious that when Stella spoke to the plant nurse in June and September 1969, she spoke of a work-related injury. She said that her pain was due to her lifting of the work baskets. Therefore, she should have received a copy of those statements. She did not and the offer of proof was properly rejected.

The employer's appeal is denied and dismissed; the decree appealed from is affirmed and the cause is remanded to the Workmen's Compensation Commission.

## APPENDIX

"28-35-10. Duplicates of documents furnished to employee. — Where an employer, his insurer, or the agents or independent contractors of either obtains from an injured employee any paper, document, report,

statement or agreement, including hospital records, nurses' notes, personnel records, reports or statements by foremen or any other supervisory employees at the injured employee's place of employment, whether signed or unsigned, and regardless of the mode of obtaining same, concerning compensation, such injured employee shall receive an exact duplicate original copy of such paper, document, report, statement or agreement, including hospital records, nurses' notes, personnel records, reports or statements by foremen or any other supervisory employees at the injured employee's place of employment which shall be signed by a duly authorized agent or the employer or his insurer. Such paper, document, report, statement or agreement, including hospital records, nurses' notes, personnel records, reports or statements by foremen or any other supervisory employees at the injured employee's place of employment, shall be furnished to the employee at the time the same is obtained, and a copy shall also be furnished to the employee's attorney forthwith upon request by said attorney. If a copy of such paper, document, report, statement or agreement, including hospital records, nurses' notes, personnel records, reports or statements by foremen or any other supervisory employees at the injured employee's place of employment is not furnished strictly in accordance with the provisions of this section, anything therein contained cannot be used by an employer or his insurer or attorney for direct or cross-examination of the employee; and the individual obtaining same may not testify in any proceeding and such paper, document, report, statement or agreement, including hospital records, nurses' notes, personnel records, reports or statements by foremen or any other supervisory employees at the injured employee's place of employment shall be inadmissible in any proceeding, if objection by the employee to its admission is made."

*Abedon, Michaelson, Stanzler & Biener, Richard A. Skolnik,* for petitioner-appellee.

*Ambrose W. Carroll,* for respondent-appellant.