**WORCESTER TEXTILE CO.**

v.

**Mario MORALES.**

**No. 80–354–Appeal.**

Supreme Court of Rhode Island.

Nov. 18, 1983.

Raul L. Lovett, Providence, for appellant.

Harold Adams, Providence, for appellee.

## OPINION

KELLEHER, Justice.

This is a workers' compensation proceeding in which the employee appeals from a decree of the Workers' Compensation Commission authorizing the employer to suspend the payment of benefits due the employee for a work-related injury that was sustained on July 26, 1975. Hereinafter we shall refer to the employee as "Morales" and the employer as "Worcester."

The present proceedings were instituted on November 28, 1977, when Worcester filed a petition to review with the Commission. Worcester there alleged that Morales was no longer incapacitated because in the spring of 1977 he had returned to work in Attleboro, Massachusetts, at Texas Instruments, Incorporated, at an average gross weekly wage far in excess of what he had been receiving at the time he was injured.

At the hearing before the trial commissioner, Morales, who lived in Pawtucket, admitted that in 1977 he did work at Texas Instruments during a fifteen-week period that began in mid-March and ended in mid-June. When he was also shown a wage transcript prepared by the Attleboro employer indicating payment of gross wages to him of $2,359.77, he said that the document was accurate. He conceded that he had told nobody about this employment. However, when asked, he denied having worked on the second shift at a "chemical plant in Massachusetts" since mid-June 1977. He did concede that he might have worked sometime in July 1977 for two days in a Providence laminating factory because of his need to support eight children.

The trial commissioner also heard from a special investigator who testified that on March 16, 1978, he had talked to Morales and was informed by Morales that he was working at a chemical company located in Plainville, Massachusetts. According to the investigator, Morales was in a hurry that day because he had to get to work for the second shift. The investigator also told the trial commissioner that on another occasion he followed Morales to Engelhard Industries in Plainville, Massachusetts, and at 2:55 p.m. watched him park his car in the company's parking lot and enter the plant's premises. The investigator then left the area and subsequently called Engelhard's personnel office and "made a verification with the personnel office by telephone" that Morales was part of the company's work force and had been since August 22, 1977.

The trial commissioner ruled that Morales's incapacity had ended because he had taken a job in which his postinjury earnings exceeded his preinjury earnings. On appeal, the appellate commission affirmed the trial commissioner.

Morales, through counsel, claims that the appellate commission erred in two areas. It ignored the provisions of G.L.1956 (1979 Reenactment) § 28–35–10 and also relied on evidence that violated the rule barring the use of hearsay testimony.

Turning to § 28–35–10, we find that this statute provides in its pertinent portions that if an employer or his insurer or anyone on their behalf obtains from an injured employee any "statement * * * concerning compensation," an exact duplicate copy thereof shall be furnished to the employee "at the time [it] is obtained." The statute also stipulates that it is applicable regardless of the method used to obtain such a statement or whether the statement is "signed or unsigned." If the requisite copy is not furnished "strictly" in accordance with the statute's provisions, the employee's attorney can bar the use of the statement as well as any testimony by the individual who obtained it.

In construing this provision, the appellate commission embraced the position that the statute is triggered only when the statement is reduced to writing. Assuming the correctness of Worcester's position, the record clearly indicates that the investigator made a written report of his surveillance of and conversation with Morales to Worcester because at one point in his testimony before the trial commissioner, he said, "I am reading and referring to my report only to make sure [that] the statements are clear."

In *Giordiano v. Uniroyal, Inc.,* 108 R.I. 226, 273 A.2d 855 (1971), the employer sought to impeach an employee who claimed she was injured when her elbow struck an iron box. An offer of proof was made in which it was alleged that a plant nurse, if permitted to testify from her notes, would show that the employee attributed her pain and discomfort to an entirely different cause. As this court noted in *Giordiano,* the statute is quite broad and embraces within its reach specifically "any paper, document, report, statement, or agreement" obtained from an injured employee regarding compensation.

Thus, it is clear that once the investigator furnished a report of his doings to Worcester, the provisions of § 28–35–10 were triggered. Consequently, evidence of the conversations between the investigator

and Morales should have been excluded from evidence.

■ It is also our belief that the appellate commission erred in relying upon the investigator's testimony concerning his telephonic verification that Morales had been employed by Engelhard Industries. As noted earlier, the Workers' Compensation Commission is bound by the strict rules of evidence. *Leviton Manufacturing Co. v. Lillibridge,* 120 R.I. 283, 387 A.2d 1034 (1978); *Cole v. New England Transportation Co.,* 88 R.I. 408, 149 A.2d 352 (1959).

In *Campbell v. DiIorio,* 90 R.I. 141, 145, 156 A.2d 79, 81 (1959), the court described the principles governing the admission of the subject matter of telephone conversations as being "well settled." In situations in which the identity of the speaker is established, it said, the telephone conversation may be admitted in the same manner and with the same effect as conversations between individuals face to face. Some of the requirements for establishing the caller's identity were alluded to in *Donahue v. Reiner Co.,* 46 R.I. 302, 303, 127 A. 359, 360 (1925), where the witness was faulted for (1) his lack of familiarity with the voice of the individual he had called and (2) a lack of knowledge of the identity of the person with whom he had spoken.

■ Because no groundwork whatsoever was laid before the investigator gave a report of his conversation with Engelhard's personnel section, such testimony should have been excluded as violative of the rule barring the use of hearsay evidence. Hearsay evidence, we have said, is an out-of-court utterance that is being offered to prove the truth of the matter asserted therein. *State v. Poulin,* R.I., 415 A.2d 1307 (1980); *Manual J. Furtado, Inc. v. Sarkas,* 118 R.I. 218, 373 A.2d 169 (1977); *Allen v. D'Ercole Construction Co.,* 104 R.I. 362, 244 A.2d 864 (1968). The investigator's statement about the content of Engelhard's telephonic response relative to Morales's employment status was pure hearsay and should have been excluded from the record since the response did not fall within any of the recognized exceptions to the rule barring the use of hearsay evidence.

■ Having faulted the commission for its evidentiary rulings, we cannot fault its conclusion in regard to Morales's continued eligibility to receive compensation benefits. The decree now under review was entered by the commission in mid-October 1976. It contains findings of fact indicating that Morales was no longer totally incapacitated from his July 1975 injury to his right hand. There were other factual findings indicating that Morales was partially incapacitated, suffering a 14 percent loss of use of his right upper extremity as well as permanent disfigurement of that extremity. The decree contained other stipulations awarding Morales weekly partial-incapacity benefits in an amount not to exceed $72.64, total-loss-of-use benefits amounting to $1,965.60, and total-disfigurement benefits of $900, as well as a clause requiring Morales, whenever he returned to work, "to furnish [Worcester] with a weekly transcript of his wages earned at such employment, in order that the amount of compensation for partial incapacity which may be due * * * if any, may be computed."

■ Our task in evaluating the commission's action when a challenge is made to the sufficiency of the evidence is quite simple. We review the record to see if there is any legal evidence to support the commission's findings. *Coletta v. Leviton Manufacturing Co.,* R.I., 437 A.2d 1380 (1981). With this standard before us, we need go no further than Morales's testimony in which he conceded that he worked at Texas Instruments during the fifteen-week period to which we have previously alluded, earning during that time gross wages of more than $2,300. At no time did he make any effort to comply with the decree's direction to notify Worcester of his employment. Morales obviously has seen fit to ignore the well-established principle that our Workers' Compensation Act relies on mutual cooperation between employers and employees to ensure that the beneficent purposes of the

act are carried out. *See M. Samas Co. v. Cipriano,* 110 R.I. 94, 290 A.2d 402 (1972). There is no necessity that Worcester obey the biblical injunction to turn the other cheek. Enough is enough. Even though we may fault some of the commission's reasoning, its ultimate conclusion finds ample support.

The employee's appeal is denied and dismissed, the decree appealed from is affirmed, and the case is remanded to the Workers' Compensation Commission.