**AMERICAN PRIVATE LINE SERVICES, INC., Plaintiff, Appellant,**

v.

**EASTERN MICROWAVE, INC., et al., Defendants, Appellees.**

**No. 91–2177.**

United States Court of Appeals, First Circuit.

Heard Sept. 17, 1992.

Decided Nov. 24, 1992.

Peter L. Brown, Boston, Mass., for plaintiff, appellant.

Paul K. Connolly, Jr., with whom Damian R. LaPlaca and LeBoeuf, Lamb, Leiby & MacRae, Boston, Mass., were on brief, for defendant, appellee Eastern Microwave, Inc.

Before BREYER, Chief Judge,
TORRUELLA and SELYA, Circuit Judges.

TORRUELLA, Circuit Judge.

Appellant, American Private Line, Inc. ("APL"), appeals from a directed verdict in favor of appellee, Eastern Microwave, Inc. ("EMI"). The verdict dismissed APL's three claims: interference with contractual relations, wrongful inducement to breach a contract, and interference with an advantageous relationship. We affirm the district court's judgment.

## BACKGROUND

APL, EMI, and Cable & Wireless Communications, Inc. ("Cable & Wireless") are common carriers of microwave transmission facilities for telephone service, regulated by the Federal Communications Commission. APL and EMI have a relationship like that of a supplier and wholesaler; APL

buys transmission capacity in bulk from EMI and resells it.

In 1986, EMI entered a one year contract for the purchase and sale of microwave transmission capacity between New York and Boston with Cable & Wireless. At the end of that year, Cable & Wireless decided not to renew its contract with EMI. Instead, it ordered its transmission capacity from APL. In its order, Cable & Wireless asked APL to: (1) waive or reduce its proposed installation costs; (2) provide authorization letters that would allow an AT & T connection between long distance carriers between Boston and New York; and (3) provide a renewal option.

APL acknowledged Cable & Wireless' request, stating that a response to the three requested terms would follow in a separate letter. Over a month later, the promised letter had not arrived, and Cable & Wireless wrote to APL expressing concern. APL never responded. Consequently, Cable & Wireless canceled its order for APL's transmission capacity, and eventually extended its original contract with EMI for one more year.

APL brought suit alleging that EMI attempted to hamper APL in its dealings with Cable & Wireless. Specifically, it asserts that EMI unfairly priced its services [1] and provided services to Cable & Wireless that it provided to no one else. APL further contends that while EMI knew that APL was attempting to include EMI in its business dealings with Cable & Wireless, EMI secured Cable & Wireless' business for itself, without APL's knowledge.

EMI denies APL's allegations, reasoning that it merely engaged in lawful and competitive business activities.

## DISCUSSION

### I. *Standard of Review*

■ We accord directed verdicts plenary review. *Gallagher v. Wilton Enterprises, Inc.*, 962 F.2d 120, 124 (1st Cir.1992) (per curiam). In doing so, we view all of the evidence in the light most favorable to the

non-moving party, and draw all reasonable inferences in favor of that party. *Id.*

### II. *Intentional Interference with Contractual Relations and Wrongful Inducement to Breach a Contract*

■ Under Massachusetts law, to prove both intentional interference with contractual relations and unlawful inducement to breach a contract, APL must first show that it had a contract. Because we find that it had no contract, we affirm the district court's directed verdict with respect to these claims.

■ The existence of a contract ordinarily is a question of fact, for the jury. *Ismert and Associates v. New England Mut. Life Ins.*, 801 F.2d 536, 541 (1st Cir.1986). If, however, the evidence consists only of writings, or is uncontroverted, then the court can decide the issue. *Id.*

In the present case, the evidence of the alleged contract is uncontroverted. It consists of: a letter from Cable & Wireless to APL ordering transmission capacity and a letter from APL to Cable & Wireless accepting most of the terms in the purchase order. In addition to the writings, APL also points to an internal memo written by an EMI employee that acknowledged an "agreement" between Cable & Wireless and APL. However, the EMI employee is not a party to this alleged contract, and her statement is irrelevant to the meeting of the minds of APL and Cable & Wireless. Accordingly, the writings are the only evidence of the alleged contract. Thus, the issue did not require a jury decision.

■ In order to form a contract through writings, the writings relied upon must clearly and definitely state the contract's essential terms. *Wilcox v. Shell Eastern Petroleum Products*, 283 Mass. 383, 186 N.E. 562 (1933). The writings that APL insists form a contract, however, leave open three crucial terms. First, APL and Cable & Wireless never agreed to installation costs. These costs could range from $5,000 up to $80,000, 27% of the entire contract. Second, they never agreed

---

**1.** EMI charged Cable & Wireless a monthly fee    of $7,000, while it charged APL $15,000.

on whether APL would provide a renewal option. Finally, APL never established that it could provide Cable & Wireless with authorization letters from AT & T. Without these letters, APL could not arrange an AT & T connection between long distance carriers between Boston and New York, which Cable & Wireless would have needed in order to provide long distance service between those cities. Thus, APL could not have brought into existence a "condition precedent" to any contract becoming binding. *Cf. Massachusetts Municipal Wholesale Electric Co. v. Danvers*, 411 Mass. 39, 577 N.E.2d 283, 287 (1991) (A condition precedent is "an event which must occur before a contract becomes effective or before an obligation to perform arises under the contract.").

Because APL and Cable & Wireless never agreed upon three essential terms, no reasonable jury could have found that they formed a binding contract. Thus, we affirm the district court's decision with respect to the claims of interference with contractual relations and wrongful inducement to breach a contract.

## III. *Interference with an Advantageous Relationship*

■ APL's third claim alleges that EMI interfered with an advantageous relationship between APL and Cable & Wireless. The elements of this tort include: (1) a business relationship or contemplated contract of economic benefit; (2) the defendant's knowledge of such relationship; (3) the defendant's interference with it through improper motive or means [2]; and (4) the plaintiff's loss of advantage directly resulting from the defendant's conduct. *United Truck Leasing Corp. v. Geltman*, 406 Mass. 811, 551 N.E.2d 20, 12 (1990).

■ We address each element in turn. First, to establish an advantageous busi-ness relationship, APL need not prove that it had a binding contract. A probable future business relationship anticipating a reasonable expectancy of financial benefit will suffice. *Powers v. Leno*, 24 Mass.App. Ct. 381, 509 N.E.2d 46, 49 (1987) (citing *Owen v. Williams*, 322 Mass. 356, 77 N.E.2d 318, 322 (1948)). In the present case, the district court determined that the transaction in question amounted to negotiations in anticipation of a future purchase and sale agreement. Thus, APL and Cable & Wireless had an advantageous business relationship.

Second, it is undisputed that EMI knew of the relationship between APL and Cable & Wireless. Prior to and during the events in question, several EMI internal memos mentioned that relationship as an obstacle to overcome in attempting to renew its contract with Cable & Wireless.

Third, we find that no jury could reasonably find that EMI interfered with that relationship through improper means or method. The record evidence, portrayed in the light most favorable to APL, consists only of the following. First, upon learning of the negotiations between APL and Cable & Wireless, EMI offered Cable & Wireless a substantially lower price than it charged APL. Second, EMI provided Cable & Wireless services that it did not offer anyone else. Third, during a meeting with EMI, APL phoned Cable & Wireless to ask if it would use EMI services through APL instead of the AT & T services that its order originally entailed. Cable & Wireless agreed. However, unknown to APL, EMI was also trying to take Cable & Wireless' business for itself, instead of through APL.

By courting Cable & Wireless with low prices and atypical services, EMI simply engaged in lawful competition to renew its already existing contract with Cable & Wireless. *Doliner v. Brown*, 21 Mass.App. 692, 489 N.E.2d 1036, 1038 (1986) ("A com-

---

**2.** Note that this tort used to require *malicious* interference with advantageous relations. *See Comey v. Hill*, 387 Mass. 11, 438 N.E.2d 811, 816 (1982). Thus, when the district court heard this case, the interference was discussed in terms of malicious conduct. However, the Supreme Judicial Court of Massachusetts established that maliciousness, with respect to this tort, did not require ill will, but rather unjustifiable conduct, which it defined as requiring something more than intent. *See Pino v. Trans Atlantic Marine, Inc.*, 358 Mass. 498, 265 N.E.2d 583, 587 (1970). In *United Truck Leasing Corp.*, 551 N.E.2d at 12, the court changed the language from malicious interference to improper interference in order to reflect the true meaning of that element of the tort.

petitor may 'interfere' with another's contractual expectancy by picking the deal off for himself, if, in advancing his own interest, he refrains from employing unlawful means."). *See also United Truck Leasing Corp.*, 551 N.E.2d at 12. In addition, APL did not yet have a contract with Cable & Wireless when EMI set out to secure that account. *Cf. United Truck Leasing Corp.*, 551 N.E.2d at 10 n. 6 (the existence of a contract might be a factor in determining whether particular conduct was improper).

Moreover, there is no evidence that EMI threatened Cable & Wireless, misrepresented any facts, defamed anyone, or used any other improper means. APL asserts that by offering Cable & Wireless a substantially lower contract price than it offered APL, EMI used improper means because the supplier contract between APL and EMI requires EMI to offer APL a price comparable to the lowest price that a common carrier offers. However, in reality, the contract says only that if APL receives a better offer than that in its contract, EMI will renegotiate the contract to try to match that price. Moreover, if APL believes that EMI breached its contract, APL can bring suit on that ground. APL never raised such a claim in the present action, nor did it offer any evidence at trial in support of its allegation. Thus, the record offered no evidence that EMI used improper means in competing with APL for the Cable & Wireless account.

In addition, EMI did not exhibit an improper motive. Its sole motivation was its own financial benefit.

Because the record exhibits no evidence that EMI competed for the Cable & Wireless account through improper means or motive, no reasonable jury could have concluded that EMI improperly interfered with APL's advantageous relationship. We therefore need not address the fourth element of the interference with an advantageous relationship claim. We affirm the district court's judgment.

*Affirmed.*