DM RESEARCH, INC., formerly known as New England Reagent Laboratories, Inc.

v.

COLLEGE OF AMERICAN PATHOLO-GISTS and National Committee for Clinical Laboratory Standards.

Civil Action No. 96–617.

United States District Court, D. Rhode Island.

April 14, 1998.

Evan Slavitt, Susan E. Raitt, Laura A. Pisaturo, Hinckley, Allen & Snyder, Providence, RI, for Plaintiffs.

Steven M. Richard, Tillinghast, Licht & Semonoff, Providence, RI, Jack R. Bierig, Sidley & Austin, Chicago, IL, for Defendants.

### MEMORANDUM AND ORDER

TORRES, District Judge.

The College of American Pathologists (CAP) and the National Committee for Clinical Laboratory Standards (NCCLS) have moved, pursuant to Fed.R.Civ.P. 12(b)(6) to dismiss the complaint filed by DM Research, Inc., (DM). The issue presented is whether the complaint states a claim for conspiracy to restrain trade in violation of § 1 of the Sherman Act. 15 U.S.C. § 1.

Because the facts alleged are insufficient to establish the existence of a conspiracy, the Sherman Act claim is dismissed, with prejudice, and the related state law claims are dismissed, without prejudice.

### Background

The pertinent facts alleged in the complaint are as follows. DM produces Type I "Reagent Grade Water" that it bottles and sells to clinical laboratories for use in scientific testing. NCCLS is a non-profit corporation composed of hundreds of members throughout the United States. It develops and promotes standards for the clinical laboratory community which includes individual laboratories, laboratory professional associations, industries and governmental agencies. CAP is a non-profit corporation composed of hundreds of board-certified pathologists throughout the United States. It accredits medical laboratories and its purpose is to insure that the test results obtained from those laboratories are accurate.

In 1991, NCCLS published a guideline stating that Type I reagent water should be used immediately after being processed because it quickly degrades. Accordingly, the guideline encouraged the use of Type I water produced in-house on a daily basis instead of bottled water produced off site. The guideline also prescribes a limit for the concentration of ions in Type I water. Ion concentrations are determined by a resistivity test that measures the degree to which the water conducts electrical current.

CAP incorporated the NCCLS guideline into the checklist it utilizes in determining whether a hospital or laboratory should be or remain accredited. As a result, many laboratories purchased purification equipment and began producing their own Type I water. That, in turn, adversely affected DM's sales.

DM's four-count complaint asserts claims for: (1) conspiracy to restrain trade in violation of § 1 of the Sherman Act, 15 U.S.C. § 1; (2) conspiracy to restrain trade in violation of the Rhode Island Antitrust Act, R.I. Gen. Laws § 6–36–4; (3) tortious interference with existing and prospective business relationships and (4) defamation. The Sher-

man Act claim is predicated on allegations that NCCLS and CAP "conspired to restrain trade" and that, in furtherance of the conspiracy, they adopted "faulty and arbitrary standards" and engage in unspecified "economic threats and intimidation of certain laboratories and referring pathologists to cease or refrain from doing business with DM Research and other bottled reagent water manufacturers."

NCCLS and CAP make a number of different arguments in support of their motions to dismiss all of DM's claims. However, there is no need to go beyond the argument that the complaint fails to state a claim for relief under the Sherman Act.

### Standard of Review

A Rule 12(b)(6) motion to dismiss should be granted only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). In making that determination, the Court must "accept the well-pleaded factual averments of the ... complaint as true, and construe these facts in the light most flattering" to the plaintiff. *Gooley v. Mobil Oil Corp.,* 851 F.2d 513, 514 (1st Cir.1988) (*quoting Chongris v. Board of Appeals,* 811 F.2d 36, 37 (1st Cir.1987)).

However, the complaint must allege *facts* that establish all of the elements of the claim asserted. *Id.* at 515; *Car Carriers, Inc. v. Ford Motor Co.,* 745 F.2d 1101, 1106 (7th Cir.1984). Bald assertions, subjective characterizations and legal conclusions are insufficient. *United States v. AVX Corp.,* 962 F.2d 108, 115 (1st Cir.1992); *Dartmouth Review v. Dartmouth College,* 889 F.2d 13, 16 (1st Cir.1989). Moreover, the factual allegations must be specific enough to justify "drag[ging] a defendant past the pleading threshold." *Gooley,* 851 F.2d at 515.

These principles are especially applicable in antitrust cases where further litigation is likely to be protracted and expensive and, therefore, the impact of unfounded claims is severe. *See Car Carriers,* 745 F.2d at 1106–07; *see also Faulkner Advertising Assocs. v. Nissan Motor Corp.,* 905 F.2d 769, 772 (4th Cir.1990) (antitrust complaint must "allege with reasonable definiteness facts from which the Court may infer conduct ... prohibited by the antitrust laws.") (*quoting Nelligan v. Ford Motor Co.,* 262 F.2d 556, 559 (4th Cir.1959)); *Sutliff, Inc. v. Donovan Cos.,* 727 F.2d 648, 654 (7th Cir.1984) (bare legal conclusions do not prevent dismissal of antitrust claims); *Bryan v. Stillwater Bd. of Realtors,* 578 F.2d 1319, 1321 (10th Cir.1977) (conclusions or opinions are not sufficient to state an antitrust claim).

■■ While antitrust complaints are not subjected to any heightened pleading requirements, courts must be vigilant to insure that the underlying facts in an antitrust complaint are pled with sufficient specificity to state a claim. Thus, an antitrust complaint "must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under *some* viable legal theory." *Car Carriers,* 745 F.2d at 1106 (*quoting In re Plywood Antitrust Litig.,* 655 F.2d 627, 641 (5th Cir.1981)) (emphasis in the original).

### Discussion

### I. The Sherman Act Claim

Section I of the Sherman Act provides, in relevant part:

> Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is hereby declared to be illegal.

15 U.S.C. § 1.

■ To state a claim under § 1, a plaintiff must allege:

1. the existence of an unlawful contract, combination or conspiracy among the defendants;

2. that the contract, combination or conspiracy unreasonably restrained trade;

3. that the restraint affected interstate commerce; and,

4. that the defendants' concerted action proximately caused injury to the plaintiff.

*Mathews v. Lancaster Gen. Hosp.,* 87 F.3d 624, 639 (3d Cir.1996); *Lee v. Life Ins. Co. of*

*North America,* 829 F.Supp. 529, 535 (D.R.I. 1993).

## A. *The Conspiracy Requirement*

■ A conspiracy is an agreement, either express or implied, between two or more parties to accomplish an unlawful objective or to accomplish a lawful objective by unlawful means. *Pearl Brewing Co. v. Anheuser–Busch, Inc.,* 339 F.Supp. 945, 950–951 (S.D.Tex.1972) (*citing United States v. Kissel,* 218 U.S. 601, 31 S.Ct. 124, 54 L.Ed. 1168 (1910); *American Tobacco Co. v. United States,* 328 U.S. 781, 66 S.Ct. 1125, 90 L.Ed. 1575 (1946); *Standard Oil Co. v. Moore,* 251 F.2d 188 (9th Cir.1957)). Unilateral action by one party is not sufficient even when it involves the conduct of several persons within in a single enterprise. *Day v. Fallon Community Health Plan, Inc.,* 917 F.Supp. 72, 77 (D.Mass.1996) (*citing Copperweld Corp. v. Independence Tube Corp.,* 467 U.S. 752, 104 S.Ct. 2731, 81 L.Ed.2d 628 (1984)). The participation of two or more parties is required.

■ When highly factual and subjective questions of intent and purpose are at issue, "summary procedures should be used sparingly" because "the proof is largely in the hands of the alleged conspirators." *Car Carriers,* 745 F.2d at 1106 (*quoting Poller v. Columbia Broadcasting Sys.,* 368 U.S. 464, 473, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962)). However, that caveat does not exempt a plaintiff from the requirement of pleading facts from which the existence of a conspiracy reasonably may be inferred. *Id.*

■ Conclusory allegations of conspiracy or unlawful purpose do not satisfy the requirement that sufficient supporting facts be pled. *Id.; see also Gilbuilt Homes, Inc. v. Continental Homes of New England,* 667 F.2d 209, 210 (1st Cir.1981); *cf. Americana Indus., Inc. v. Wometco de Puerto Rico, Inc.,* 556 F.2d 625, 627–628 (1st Cir.1977). Nor is the "invocation of antitrust terms of art" a substitute for the necessary factual allegations. *Car Carriers,* 745 F.2d at 1110; *Gilbuilt Homes,* 667 F.2d at 210 ("liberal use of terms such as 'conspire'" will not prevent dismissal of an antitrust complaint).

## B. *DM's Complaint*

■ In support of its Sherman Act Claim, DM alleges two facts amounting to what, in antitrust parlance, is referred to as "conscious parallel behavior." *See Kreuzer v. American Academy of Periodontology,* 735 F.2d 1479, 1487 (D.C.Cir.1984). Those facts are: (1) that NCCLS promulgated the guideline in question and (2) that CAP incorporated that guideline into its accreditation checklist.

■ However, parallel behavior, by itself, does not constitute a conspiracy. *Id.* That is especially true when, as here, the behavior is engaged in by two independent professional organizations and relates to a matter of mutual interest and concern. *Id.* at 1488. The facts must be sufficient to establish that the alleged conspirators reached an agreement or understanding to accomplish an unlawful purpose. *Id.* at 1488–89.

■ Direct evidence of an explicit agreement is not required to prove a conspiracy. The existence of a conspiracy may be inferred from the actions of the alleged conspirators. *Id.* at 1487–88. However, such an inference must be reasonable and "is warranted only when a theory of rational, independent action is less attractive than that of concerted action." *Id.* at 1487 (*quoting Federal Prescription Serv., Inc. v. American Pharm. Ass'n,* 663 F.2d 253, 267 (D.C.Cir. 1981)). Thus, "[I]f [CAP and/or NCCLS] had no rational economic motive to conspire, and if their conduct is consistent with other, equally plausible explanations, the conduct does not give rise to an inference of conspiracy." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 596–597, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

In this case, it is unreasonable to infer that the defendants' conduct was the product of an unlawful conspiracy rather than independent action. The complaint, itself, alleges that "CAP members constitute a majority of those who purchase high grade water products" and that NCCLS members include individual laboratories. It further alleges that CAP's adoption of the NCCLS guideline will restrict the supply and increase the price of

reagent water. In light of those facts, it is illogical to infer that NCCLS and CAP would conspire to accomplish a purpose that is so patently contrary to the interests of its members.

DM asks the Court to base such an inference on the allegation that one member and one former member of NCCLS manufacture equipment for producing reagent water on site and, presumably, would benefit from increased sales of that equipment. However, the complaint is devoid of any factual allegations from which it reasonably could be inferred that a single member of NCCLS could induce an organization consisting of hundreds of members to act in a manner so patently contrary to their interests.

Moreover, even if such an inferential leap were warranted, the complaint is utterly bereft of any factual allegations supporting a conclusion that CAP would participate in such a scheme. As already noted, a conspiracy requires the participation of two or more parties. Here, there is no allegation that CAP's members include any manufacturers of water purification equipment who would benefit from the alleged conspiracy. On the contrary, as previously stated, since CAP's members are the principal purchasers of reagent water, they would be the primary victims of the alleged scheme.

The inherent implausibility of inferring a conspiracy from the facts alleged underscores the insufficiency of DM's bald assertion that a conspiracy existed. As already noted, such assertions, even when couched in statutory "terms of art" do not support an antitrust claim. *Car Carriers,* 745 F.2d at 1110. Apart from vague assertions that the defendants engaged in unspecified "economic threats and intimidation of certain laboratories," the complaint fails to allege any facts regarding the manner in which the conspiracy operated or the acts committed in furtherance of the conspiracy other than CAP's adoption of the NCCLS guideline.

Much of the complaint is devoted to allegations that the guideline is "faulty and arbitrary." More specifically, it attacks the validity of using a resistivity test to assess the purity of reagent water. DM relies on those allegations in arguing that a conspiracy existed. However, that argument is less than persuasive for two reasons. First, the possibility that the guideline may be faulty is not very compelling evidence that, therefore, it must be the product of a conspiracy. In addition, the contention that the guideline is erroneous because it is based on a resistivity test is inconsistent with the acknowledgment contained in the complaint, itself, that a resistivity test is used by the American Chemical Society in establishing its reagent water requirements.

For all of the foregoing reasons, the Court finds that Count I of the complaint does not allege sufficient facts to state a claim under § 1 of the Sherman Act and, therefore, it should be dismissed.

## II. *State Law Claims*

The complaint cites 28 U.S.C. § 1367(a) as the jurisdictional basis for state law claims asserted in Counts II—IV. Having determined that the sole federal claim should be dismissed, the Court has discretion to determine whether it should exercise supplemental jurisdiction over those claims. 28 U.S.C. § 1367(c)(3).

The Supreme Court has held that, as a general rule:

> [n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law. Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.

*United Mine Workers of America v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

In this case, there is no reason for deviating from that principle. The claims in question are governed entirely by state law. Moreover, NCCLS' companion motion to dismiss raises serious questions as to whether this Court has in personam jurisdiction that would permit it to resolve those claims. If it wishes, DM may pursue those claims in an appropriate state court forum.

*Conclusion*

For all of the foregoing reasons, Count I of the plaintiff's complaint is dismissed, with prejudice, for failure to state a claim upon which relief can be granted. Counts II, III and IV are dismissed, without prejudice.

IT IS SO ORDERED,