[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] DECISION
Before this Court is the motion for summary judgment and cross motion for summary judgment of National Glass Gate Service, Inc., Alan P. Riendeau, Michael Cote, Patricia DiMascio, Claudia Silva, and Charles Vachon (Defendants). Also before this Court are the motion to strike, renewed motion for partial summary judgment, and cross-motion for partial summary judgment of Chain Store Maintenance, Inc. (Plaintiff).
 FACTS/TRAVEL
National Glass Gate Service, Inc. (National), a Rhode Island corporation, provides emergency glass replacement and other facilities maintenance services to national retail chains. In order to provide these services, National maintains a network of subcontractors[1] who work in various trades and who are located throughout the United States. National keeps data concerning this network in a computer database. National's president is Charles Vachon (Vachon).
In 1991, John Catanese (Catanese) and Stephen Hopkins (Hopkins), both of whom were National employees, left National and formed Plaintiff, a Massachusetts corporation. Like National, Plaintiff utilizes a network of subcontractors to provide maintenance and repair services to retail establishments.
At issue in this case is certain information that Plaintiff, to perform its business, collected and stored in a computer database. This information includes: a list of subcontractors from various trades upon whom Plaintiff can call to service its customers; unique pricing data and individual pricing arrangements that Plaintiff has negotiated with its subcontractors; data concerning subcontractors' response time, the nature and quality of their services, and personal information; and a list of customers and prospective customers as well as personal data concerning the same.
For some years, Patricia DiMascio (DiMascio) worked at National as a service consultant. From 1997 to 1999, however, DiMascio worked for Plaintiff. In 1999, DiMascio returned to work for National on a full-time basis. She, nevertheless, continued to work for Plaintiff every other weekend. During the weekends when DiMascio worked for Plaintiff she utilized a laptop computer provided by Plaintiff. The laptop contained the "store file" — which includes customer records, addresses, and telephone numbers — and the "vendor file." (DiMascio Tr. 43.)
In 1999, National was seeking carpentry and painting subcontractors for its database. (Riendeau Tr. 25.) Alan P. Riendeau (Riendeau), National's chief operating officer, learned that DiMascio possessed Plaintiff's laptop and requested that DiMascio bring the laptop to National's office. DiMascio claims that after Riendeau's second request, she brought the laptop in.
Testimony as to the events that took place after DiMascio brought the laptop in conflicts. Catherine Boisvert (Boisvert), a National computer room employee, asserts that DiMascio and Riendeau brought the laptop to her and that DiMascio retrieved some data from the laptop and highlighted certain vendor information on the laptop's screen. Boisvert further claims that DiMascio and Riendeau asked her to download the highlighted information onto National's computer system, but since the information was incompatible with National's system, she copied it onto a hard diskette. DiMascio claims, on the other hand, that she delivered the laptop to Boisvert's office and that Boisvert returned the computer to her later that day.
Plaintiff and Defendants controvert exactly what the copied information included. Plaintiff alleges that National copied information including but not limited to its customer list, customer data, pricing formulae, subcontractor list, and subcontractor data. Amended Complaint at 4. In support of this contention, Plaintiff relies on the testimony of Matthew Arsenault (Arsenault), Claudia Silva (Silva), and Hopkins. Arsenault, a former National employee, claims that Defendants copied vendors' names, addresses, telephone numbers, fax numbers, 24-hour availability status, contact information, and service areas.[2] (Arsenault Tr. 50.) Arsenault further testified that the copied information pertained to carpentry, plumbing, and electrical vendors. (Id. at 44.)
Silva, National's employee and Plaintiff's former employee, testified concerning a printed list that National had given her and from which she was to make faxes and telephone calls. (Silva Tr. 26, 94.) This list, she testified, contained vendors' names, addresses, telephone numbers, and fax numbers as well as Plaintiff's vendor codes, which include vendor rating information. (Id. at 15, 93).
Finally, Hopkins, Plaintiff's president and majority shareholder, asserts that Defendants copied an unlisted cellular telephone number, federal identification numbers, fax numbers, beeper numbers, contractor quality information, and liability and workers' compensation information. (Hopkins Tr. 117, 124.) Hopkins also testified that the printed list to which Silva referred contained Plaintiff's coding information for identifying its contractors by trade, location, and insurance coverage. (Id. at 130.)
Defendants, on the other hand, rely on Boisvert's testimony that the information consisted of vendor names, addresses, and telephone numbers and did not include vendor rates, comments about the vendors, or information about Plaintiff's customers. (Boisvert Tr. 69-70.)
Plaintiff alleges that Michael Cote (Cote), a National computer room employee, knowingly performed a "data dump" of the copied information so that National could utilize it. AmendedComplaint at 4. Plaintiff further claims that National has used the copied information in competition with Plaintiff and has gained greater than $100,000 from vendors listed in Plaintiff's database. Pl's Mem. in Supp. of Cross-Mot. for Partial Summ. J.
at 4. On July 11, 2001, Plaintiff filed this suit. Plaintiff alleges the following claims: Uniform Trade Secrets Act (Count I); Intentional Access to Computer Information without Authorization (Count II); Unfair or Deceptive Acts or Practices (Count III); Interference with Advantageous Relationship (Count IV); Interference with Prospective Relationships (Count V); Breach of Fiduciary Duty (Count VI); Larceny (Count VII); Racketeer Influence and Corrupt Organization (Count VIII); and Civil Conspiracy (Count IX).
Plaintiff has filed a motion to strike the Supplemental Affidavit of DiMascio, a renewed motion for partial summary judgment as to liability on Count II, and a cross-motion for partial summary judgment as to liability on Count VI. Defendants have advanced a motion for summary judgment against Plaintiff as to Counts I, III, IV, V, VI, VII, VIII, and IX and a cross motion for summary judgment as to Count II.
 STANDARD OF REVIEW
In a summary judgment proceeding, the moving party must demonstrate that he or she is entitled to judgment as a matter of law and that no genuine issues of material fact exist.Palmisciano v. Burrillville Racing Ass'n, 603 A.2d 317, 320 (R.I. 1992); Super. R. Civ. P. Rule 56(c). During such a proceeding, "the court does not pass upon the weight or credibility of the evidence but must consider the affidavits and other pleadings in a light most favorable to the party opposing the motion." Palmisciano, 603 A.2d at 320. Moreover, "the trial justice must look for factual issues, not determine them" as the judge's sole function is to determine whether any issues involving material fact exist. Steinberg v. State,427 A.2d 338, 340 (R.I. 1981).
"When an examination of pleadings, affidavits, admissions, answers to interrogatories and other similar matters, viewed in a light most favorable to the party opposing the motion, reveals no such issue, the suit is ripe for summary judgment." IndustrialNat'l Bank v. Peloso, 121 R.I. 305, 307, 397 A.2d 1312, 1313 (R.I. 1979). In opposing the summary judgment motion, the nonmoving party will not be allowed to rely upon mere allegations or denials in his or her pleadings. Bourg v. Bristol Boat Co.,705 A.2d 969, 971 (R.I. 1998); Super. R. Civ. P. 56(e). Instead, by affidavits or otherwise, the nonmoving party possesses an affirmative duty to set forth specific facts demonstrating the existence of a genuine issue of material fact. Id. It is not, however, an absolute requirement that the nonmoving party file an affidavit in opposition to the motion. Steinberg, 427 A.2d at 340. Rather, if the moving party's affidavit does not establish the absence of a material factual issue, the trial justice should deny the motion despite the nonmoving party's failure to file a counter-affidavit. Id.
Superior Court Rule of Civil Procedure 56(e) states that "[s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as shall be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Consequently, a trial justice ruling on a summary judgment motion should not consider hearsay contained in affidavits. SeeNichola v. Fiat Motor Co., 463 A.2d 511, 513-14 (R.I. 1983) (ruling that court erred in granting summary judgment where statements in the supporting affidavit "amounted to little more than hearsay, which should not have been considered by the trial justice in ruling on the summary-judgment motion"). Hearsay consists of "an out-of-court utterance that is being offered to prove the truth of the matter asserted therein." WorcesterTextile Co. v. Morales, 468 A.2d 279, 281 (R.I. 1983).
Furthermore, Superior Court Rule of Civil Procedure 56(c) provides that "[a] summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages." That is, "when there is a genuine issue as to damages, but not as to the ultimate liability of the nonmoving party, an interlocutory summary judgment is appropriate." Wright, Miller Kane, FederalPractice and Procedure: Civil 3d § 2736.
 PLAINTIFF'S MOTION TO STRIKE
Plaintiff moves this Court to strike the Supplemental Affidavit that DiMascio filed in response to Plaintiff's cross-motion for partial summary judgment, arguing that the affidavit contradicts DiMascio's deposition testimony. The Rhode Island Supreme Court has not squarely addressed whether, in ruling on a motion for summary judgment, a court may consider an affidavit that contradicts the affiant's prior deposition testimony. However, in an appeal from the Superior Court's grant of summary judgment, the defendants in one case argued that the Court should disregard a plaintiff's affidavit on the grounds that it contradicted his deposition testimony. Martins v. Omega Electric Co., Inc.,692 A.2d 1203, 1204-05 (R.I. 1997). In declining to disregard the affidavit, the Court noted that
 "[u]pon comparison of . . . [the plaintiff's] deposition and his affidavit, we cannot conclude that the latter is so contradictory as to warrant its exclusion from our consideration. The questions posed to . . . [the plaintiff] at the deposition were not unambiguous. His affidavit, we believe, attempted to clarify several of the answers . . . [the plaintiff] gave earlier at the deposition . . ." Id.
The federal cases dealing with this issue reflect divergent views.[3] The First Circuit, in a case which purports to apply Rhode Island law, adhered to the view that "[w]hen an interested witness has given clear answers to unambiguous questions, he cannot create a conflict and resist summary judgment with an affidavit that is clearly contradictory, but does not give a satisfactory explanation of why the testimony is changed." Colantuoni v. Alfred Calcagni Sons, 44 F.3d 1, 4-5 (1st Cir. 1994).
This Court finds that, in two instances, DiMascio's affidavit clearly contradicts prior deposition testimony. For instance, DiMascio testified as follows:
 Q. So did you bring the laptop in the first time that Alan asked you to?
 A. No, I did not.
 Q. And why not?
 A. I was uncomfortable.
 Q. Why were you uncomfortable?
 A. Because it was someone else's laptop.
 Q. Do you know why he was asking you to bring it in?
 A. Yes.
 Q. Why — strike that. Did you have conversations with him about the laptop?
 A. Not that I recall. It was —
 Q. Go ahead.
 A. No, not that I recall.
 Q. But he told you why he wanted it, didn't he?
 A. Not specifically, no, he did not.
 Q. Did you figure out why he wanted it?
 A. Yes, I did.
 Q. And what did you figure out?
 A. We were looking at carpentry — he was looking at carpentry vendors.
 Q. And what does that have to do with the laptop?
 A. There was data on the laptop.
 Q. Did you have a conversation with Alan about the data that was on the laptop?
 A. Other than the fact that there was data on the laptop?
 Q. That's the only conversation you had?
 A. Yes.
 Q. So he knew from your conversation that this was carpentry data on the laptop?
 A. Yes, he did.
 Q. And how many times did he ask you to bring the laptop in before you actually brought it in to the best of your estimate?
 A. Two times.
 . . .
 Q. You didn't want to bring it in, did you? Ms. Nakasian: Objection.
 A. No.
 Q. And why didn't you want to bring it in?
 A. I was uncomfortable.
 Q. And what made you uncomfortable?
 A. It was somebody else's property.
 Q. Well, Alan wasn't going to keep the laptop, was he?
 A. Not that I'm aware of.
 Q. What was he going to do with it, do you know?
 A. I don't know, no.
 Q. You had that data into the laptop?
 A. Yes, I did.
 Q. And you knew he wanted the data?
 A. Yes, I did.
 Q. And you believe that he was going to take data off the laptop; is that correct?
 Ms. Nakasian: Objection.
 A. Yes.
(DiMascio Tr. 74-76.) DiMascio further testified:
 Q. Other than Keri did you ever have a conversation with anybody prior to July 1 of this year in which you told that person that you had brought the laptop to the computer room at National?
 Ms. Nakasian: Objection.
 A. Not that I recall.
 Q. Would you do it again?
 Ms. Nakasian: Objection.
 A. No.
 Q. Why wouldn't you do it again?
 Ms. Nakasian: Objection.
 A. Because I just wouldn't.
 Q. What would be the reason?
 A. Because it's wrong.
 Q. Did you know it was wrong at the time?
 Ms. Nakasian: Objection.
 A. Yes.
 Q. Why did you do it then?
 Ms. Nakasian: Objection.
 A. Because I was asked to.
 Q. By whom?
 Ms. Nakasian: Objection.
 A. Alan Riendeau.
(DiMascio Tr. 110-11.) In her affidavit, however, DiMascio swore that "[w]hen I testified . . . that I thought bringing the laptop to National was "wrong," I was explaining my concern about the laptop itself, not the data that was saved on it." (DiMascio Aff. ¶ 5.)
DiMascio also testified:
 Q. Is it fair to say when you were working at Chain Store and you needed someone to do service for a customer it would be easier for you as a service consultant if there were a vendor already in the database that you could use? Ms. Nakasian: Objection.
 A. Yes.
 Q. And you wouldn't have to go through the process of finding a vendor, making sure that the vendor would show up and getting all the data about the vendor, correct? Ms. Nakasian: Objection.
 A. Yes.
 Q. So you knew that having access to that database was valuable to you as a service consultant, correct? Ms. Nakasian: Objection.
 A. Yes.
(DiMascio Tr. 114-15.) Nevertheless, by affidavit, DiMascio swore that "I do not think that the data (names and addresses) has any significant value to anyone." (DiMascio Aff. ¶ 5.) Finding that DiMascio's affidavit clearly contradicts her prior deposition testimony, this Court grants Plaintiff's motion to strike.
 DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
I. Count I — Uniform Trade Secrets Act
Defendants move this Court to grant summary judgment on Count I for two reasons. First, Defendants assert that Plaintiff has admitted that it possesses no evidence that National obtained its customer information. Second, Defendants assert that even if Plaintiff can prove that National obtained its customer information and/or its vendor information, such information fails to constitute a trade secret because it is generally known and readily available from many public sources.
The Rhode Island Uniform Trade Secrets Act defines a trade secret as
 "information, including a formula, pattern, compilation, program, device, method, technique, or process, that:
 (i) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and
 (ii) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy." G.L. 1956 § 6-41-1.
Considering the evidence in a light most favorable to Plaintiff, this Court finds that a genuine issue of material facts exists as to what information Defendants copied from Plaintiff's database. Boisvert testified that the copied information consisted only of vendors' names, addresses, and telephone numbers and did not include vendor rates, comments about the vendors, or information about Plaintiff's customers. Arsenault, Silva, and Hopkins' testimony, on the other hand, indicates that Defendants copied carpentry, plumbing, and electrical vendors' names, addresses, telephone numbers, fax numbers, beeper numbers, 24-hour availability status, contact information, and service areas. Additionally, their testimony suggests that the copied data includes federal identification numbers; information concerning contractor quality, liability, and workers' compensation; an unlisted cellular telephone number; and Plaintiff's vendor codes, which contain vendor rating information and identify its contractors by trade, location, and insurance coverage. Given this genuine dispute as to a material issue, this Court denies Defendants' motion for summary judgment as to Count I.
II. Count III — Unfair or Deceptive Acts or Practices
In its Amended Complaint, Plaintiff asserts a claim for unfair or deceptive acts or practices under Mass. Gen. Laws Ch. 93A. Defendants move for summary judgment as to this claim, arguing that Plaintiff cannot prove an unfair or deceptive act or practice, injury, or the occurrence primarily and substantially in Massachusetts of the misconduct.
This Court finds that choice of law rules preclude Plaintiff's claim under Mass. Gen. Laws Ch. 93A. The Rhode Island Supreme Court has adopted the interest weighing approach when resolving choice of law questions. Najarian v. Nat'l Amusements Inc.,768 A.2d 1253, 1255 (R.I. 2001); Woodward v. Stewart, 104 R.I. 290, 299, 243 A.2d 917, 923 (1968). Pursuant to this approach, courts "look at the particular case facts and determine therefrom the rights and liabilities of the parties `in accordance with the law of the state that bears the most significant relationship to the event and the parties.'" Najarian, 768 A.2d at 1255. In determining which law applies, courts weigh the following factors: "(1) predictability of result; (2) maintenance of interstate and international order; (3) simplification of the judicial task; (4) advancement of the forum's governmental interests; and (5) application of the better rule of law." Id.
Moreover, when applying these principles to cases sounding in tort, courts consider: "(a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered." Id.
Applying these factors, this Court finds that Rhode Island bears the most significant relationship to the event and the parties. First, the injury that Plaintiff sustained, which Plaintiff asserts to be Defendants' unjust enrichment, occurred in Rhode Island where Defendants are located and presumably collect their profits. Second, the injury causing conduct occurred at National's offices in Rhode Island, where Defendants accessed, copied, and allegedly used the information. Third, the relationship between Defendants and Plaintiff is centered in Rhode Island where Plaintiff's part-time employee, DiMascio, brought Plaintiff's laptop computer to National's office. Fourth, while Plaintiff is a Massachusetts corporation, Riendeau, Vachon, DiMascio, Cote, and Silva are residents of Rhode Island and National is a Rhode Island corporation. Finally, the parties might reasonably expect Rhode Island law to apply to an injury that occurred in that state and that Rhode Island has a significant interest in regulating the access and taking of certain information at a Rhode Island premises. Therefore, the factors of predictability of results and maintenance of interstate order weigh in favor of Rhode Island Finding that Rhode Island, and not Massachusetts law, constitutes the appropriate law to apply to this case, this Court grants Defendants motion for summary judgment relative to Count III.
III. Counts IV and V — Interference with Advantageous Relationships and Prospective Relationships
In Counts IV and V, Plaintiff asserts that Defendants have interfered with its advantageous relationships with its customers and vendors and its prospective relationships with its customers.Amended Complaint at 11. Defendants move for summary judgment as to these claims on the grounds that Plaintiff does not possess an exclusive relationship with its vendors; conducted business between 1996 and 2002 with only 40% of the vendors whose information National allegedly copied; cannot demonstrate an "intentional act of interference" because its vendors are free to work with National; cannot establish that it has sustained injury as a result of National's alleged possession of its vendor list; and cannot prove by specific facts that National had access to or took its customer lists.
Plaintiff, in response, offers Catanese's testimony that one of Plaintiff's subcontractors told Catanese, essentially, that rather than answer Catanese's question regarding pricing, he would "just go work with National." (Catanese Tr. 115-16.)[4] Plaintiff also relies on Catanese's testimony that a customer told him that Plaintiff had lost some of its business to National. (Id. at 122.) Plaintiff's business with this particular customer diminished substantially, but it was able to regain a good portion of the business after about six months. (Id. at 123.) Finally, Plaintiff finds support for its claims in a buyer's statement to Catanese that National was conducting the same kind of business as Plaintiff. (Id.)
The elements of a claim for interference with an advantageous relationship consist of "(1) a business relationship or contemplated contract of economic benefit; (2) the defendant's knowledge of such relationship; (3) the defendant's interference with it through improper motive or means; and (4) the plaintiff's loss of advantage directly resulting from the defendant's conduct." Am. Private Line Servs., Inc. v. E. Microwave, Inc.,980 F.2d 33, 36 (1st Cir. 1992). See also 45 Am. Jur.2dInterference § 48 (stating the elements of a claim for tortious interference with a business relationship as (1) "the existence of a valid business relation or expectancy"; (2) "knowledge of the relationship or expectancy on the part of the interferer"; (3) "intentional and unjustified act of interference on the part of the interferer"; (4) "proof that the interference caused the harm sustained"; and (5) "damage to the party whose relationship or expectancy has been disrupted"). Furthermore, "to establish an advantageous business relationship, . . . [the claimant] need not prove that it had a binding contract." Am. Private Line Servs.,Inc., 980 F.2d at 36. Rather, "[a] probable future business relationship anticipating a reasonable expectancy of financial benefit will suffice." Id. at 36.
The tort of interference with prospective contractual relations "is known by different names in different jurisdictions, for example, interference with prospective economic advantage, inducing refusal to deal, interference with reasonable expectancy or business relations." Mesolella v. Providence, 508 A.2d 661, 669 (R.I. 1986). "The particular elements of the tort include (1) the existence of a business relationship or expectancy, (2) knowledge by the interferor of the relationship or expectancy, (3) an intentional act of interference, (4) proof that the interference caused the harm sustained, and (5) damages to the plaintiff." Id. A plaintiff need not prove the existence of a contract when the interference claimed is with a prospective relationship. Ed Peters Jewelry Co. v. C J Jewelry Co.,51 F. Supp.2d 81, 102 (D.R.I. 1999).
This Court finds that Plaintiff has failed to demonstrate the existence of a genuine issue of material fact that it sustained damages as a result of Defendants' alleged interference with its advantageous and prospective relationships. Catanese's testimony of subcontractor's and customers' statements constitutes hearsay, which this Court cannot consider in ruling on a summary judgment motion. See Super. R. Civ. P. 56(e) (stating that "[s]upporting and opposing affidavits . . . shall set forth such facts as shall be admissible in evidence"). See also discussion supra p. 6. Furthermore, Catanese's testimony alone that Plaintiff's business with a customer diminished substantially is insufficient to establish a causal link between the damage and Defendants' alleged interference. Accordingly, this Court grants Defendants' motion for summary judgment as it pertains to Counts IV and V.
IV. Count VII — Larceny
In Count VII, Plaintiff asserts a claim for larceny under R.I. Gen. Laws § 9-1-2.[5] Defendants move for summary judgment as to this claim, arguing, inter alia, that Defendants did not possess the requisite intent to deprive Plaintiff of the information on the laptop. Plaintiff, on the other hand, argues that an inference of permanent deprivation exists because DiMascio did not return the laptop to Plaintiff until Catanese requested its return. Furthermore, Plaintiff claims that R.I. Gen. Laws § 11-41-11.1, dealing with unlawful appropriation, as well as § 11-52-1 et seq., dealing with computer crime, encompass the type of larceny DiMascio committed.
Larceny consists of "a wrongful taking without right and a carrying away of another's personal property with a felonious intent to steal." State v. Holley, 604 A.2d 772, 774 (R.I. 1992); State v. Smith, 56 R.I. 168, 178-79, 184 A. 494, 499 (1936). Therefore, "the crime of larceny is completed when a defendant, having possession and control of the property, moves it from its customary location with the intent to deprive the owner of permanent possession." In re Timothy, 442 A.2d 887, 890 (R.I. 1982).
This Court finds that Plaintiff has failed to establish a genuine issue of material fact concerning an intent on the part of Defendants to permanently deprive Plaintiff of its computer data. Plaintiff's contention that DiMascio did not return the laptop to Plaintiff until Catanese requested its return is irrelevant because the property at issue consists of the information contained on the laptop, not the laptop. Even if the laptop itself were at issue, a careful review of Catanese's testimony reveals that Catenese called DiMascio while she was still employed by Plaintiff to obtain the laptop in order to reconfigure it, and that DiMascio agreed to return the laptop. (See Catanese Tr. 59.)
Furthermore, in Count VII of its Amended Complaint, Plaintiff has not pled a claim under R.I. Gen. Laws §§ 11-41-11.1 or11-52-1 et seq.; rather, Plaintiff refers only to larceny.See Amended Complaint at 13 (stating that "[t]he conduct of the Defendants in taking the Plaintiff's customer list, customer data, pricing formulae, subcontractor list and subcontractor data, constitutes larceny") (emphasis added). Plaintiff, therefore, cannot now raise these claims as R.I. Gen. Laws §11-41-11.1 concerns unlawful appropriation of money or other property while R.I. Gen. Laws § 11-52-3 concerns intentional access, alteration, damage, or destruction. Moreover, a claim under R.I. Gen. Laws §§ 11-52-4 requires proof of an intent to permanently deprive, the element as to which Plaintiff has failed to establish a genuine issue of material fact. Accordingly, this Court grants Defendants' motion as to Count VII.
V. Count VIII — Racketeer Influence and Corrupt Organization
To satisfy the elements of a claim under RICO, the claimant must prove "(1) the commission of one act of racketeering activity and (2) the use or investment of the proceeds of the racketeering activity in the establishment, conduct, or operation of an enterprise." State v. Brown, 486 A.2d 595, 599 (R.I. 1985). "Racketeering activity" consists of
 "any act or threat involving murder, kidnapping, gambling, arson in the first, second, or third degree, robbery, bribery, extortion, larceny or prostitution, or any dealing in narcotic or dangerous drugs which is chargeable as a crime under state law and punishable by imprisonment for more than one year, or child exploitations for commercial or immoral purposes in violation of § 11-9-1(b) or (c) or § 11-9-1.1." G.L. 1956 § 7-15-1.
As Plaintiff's larceny claim fails, and Plaintiff has not provided evidence that Defendants committed any other "racketeering activity" as set forth in the statute, this Court grants Defendants' motion for summary judgment as to Count VIII.
VI. Count IX — Civil Conspiracy
Defendants move for summary judgment as to Count IX on several grounds, including that Plaintiff can demonstrate neither that it sustained damages nor that Defendants were part of a common agreement to engage in the misappropriation of trade secrets. Defendants also argue that per black letter law National, a corporation, and the remaining defendants, acting as agents, could not have engaged in a conspiracy together.
Plaintiff, however, asserts that Riendeau induced DiMascio to bring the laptop into National's offices for the purpose of copying Plaintiff's data; that DiMascio complied with this request; that data was copied; that Silva admitted to having a document containing such data; and that Arsenault testified that National utilized the data. Pl.'s Mem. in Resp. to Defs.' Mot.for Summ. J. at 22. Furthermore, Plaintiff claims that National realized $100,000 from the use of its data. Id.
"The essential elements required to establish a civil conspiracy are the same as required to establish a criminal conspiracy." 15A C.J.S. Conspiracy, § 1(2) (1967 Supp. 1995). A criminal conspiracy claim, however, focuses on the agreement, while a civil conspiracy claim focuses on the resulting damage to the plaintiff. 15A C.J.S. Conspiracy, § 1(1). See also Youngv. Aylesworth, 35 R.I. 259, 261, 86 A. 555, 555 (1913) (stating that "the gist of a civil action for damages suffered by reason of conspiracy is the actual damage sustained by the plaintiff, and not the confederating together").
To establish a conspiracy claim, the claimant must establish that "(1) there was an agreement between two or more parties and (2) the purpose of the agreement was to accomplish an unlawful objective or to accomplish a lawful objective by unlawful means."Smith v. O'Connell, 997 F. Supp. 226, 241 (D.R.I. 1998). The actors must agree on the object or course of action. Moss v.Camp Pemigewassett, Inc., 312 F.3d 503, 512 (1st Cir. 2002). The claimant, however, need not produce direct evidence of an explicit agreement to prove a conspiracy. DM Research v. Collegeof Am. Pathologists, 2 F. Supp.2d 226, 229 (D.R.I 1998). Rather, "a conspiracy may be inferred from the actions of the alleged conspirators." Id. "[S]uch an inference must be reasonable and `is warranted only when a theory of rational, independent action is less attractive than that of concerted action.'" Id.
Furthermore, "[a] civil conspiracy claim requires the specific intent to do something illegal or tortious." Guilbeault v. R.J.Reynolds Tobacco Co., 84 F. Supp.2d 263, 268 (D.R.I. 2000). Anyone who knows of the conspiracy and intentionally takes part in or performs any act to further the illegal agreement becomes a participant in the conspiracy. State v. Giorgi, 115 R.I. 1, 4,339 A.2d 268, 270 (1975); State v. Gilman, 110 R.I. 207, 218,291 A.2d 425, 432 (1972).
It is well-settled that "a conspiracy between a corporation and its agents, acting within the scope of their employment, is a legal impossibility." Marmott v. Maryland Lumber Co.,807 F.2d 1180, 1184 (4th Cir. 1986); Fairley v. Andrews, 300 F. Supp.2d 660, 668 (N.D. Ill. 2004). See also Walker v. ProvidenceJournal Co., 493 F.2d 82, 87 (1st Cir. 1974) (stating that "a corporation cannot conspire with its own employees"). The policy behind the intracorporate conspiracy doctrine "is to preserve independent decision-making by business entities and their agents free of the pressure that can be generated by allegations of conspiracy." Fairley, 300 F. Supp.2d at 668.
This Court finds that there are genuine issues of material fact as to whether Plaintiff sustained injury and whether an agreement existed between DiMascio and Riendeau. Accordingly, this Court denies Defendants' motion for summary judgment as to Count IX.
 PLAINTIFF'S RENEWED MOTION FOR PARTIAL SUMMARY JUDGMENT AND DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT AS TO COUNT II
In Count II of its Amended Complaint, Plaintiff alleges that Defendants violated Chapter 52 of Title 11 of the Rhode Island General Laws.[6] Plaintiff seeks partial summary judgment as to liability against DiMascio, Riendeau, and National on Count II. Defendants move for summary judgment as to the same count, asserting three primary arguments: (1) Defendants are not guilty of violating R.I. Gen. Laws § 11-52-3 because DiMascio was authorized to access the laptop's data; (2) Defendants are not guilty of violating R.I. Gen. Laws § 11-52-4 because Plaintiff cannot prove that Defendants possessed an intent to permanently deprive Plaintiff of the data; and (3) Plaintiff cannot maintain an action under R.I. Gen. Laws § 11-52-6(a) because it cannot identify any damages that it has sustained.
Rhode Island General Laws § 11-52-3, entitled "Intentional access, alteration, damage, or destruction" provides that
 "Whoever, intentionally and without authorization, directly or indirectly, accesses, alters, damages, or destroys any computer, computer system, computer network, computer software, computer program, or data contained in a computer, computer system, computer program, or computer network shall be guilty of a felony and shall be subject to the penalties set forth in § 11-52-5."
Additionally, Rhode Island General Laws § 11-52-4, designated "Computer theft" states:
 "Whoever, intentionally and without claim of right, and with intent to permanently deprive the owner of possession, takes, transfers, conceals or retains possession of any computer, computer system, computer network, computer software, computer program, or data contained in a computer, computer system, computer program, or computer network with a value in excess of five hundred dollars ($500) shall be guilty of a felony and shall be subject to the penalties set forth in § 11-52-5. If the value is five hundred dollars ($500) or less, then the person shall be guilty of a misdemeanor and may be punishable by imprisonment for a term not exceeding one year or by a fine of not more than one thousand dollars ($1,000), or both."
"Any person injured as a result of a violation of . . . [C]hapter [52] may bring a civil action against the violator for compensatory damages, punitive damages, court costs, and such other relief as the court deems appropriate, including reasonable attorneys' fees." G.L. 1956 § 11-52-6(a).
This Court finds that DiMascio is entitled to judgment as a matter of law on Count II. Plaintiff's claim against DiMascio under R.I. Gen. Laws § 11-52-3 fails because DiMascio was not without authorization to access Plaintiff's computer or data. To the contrary, Defendants have provided evidence that DiMascio was, pursuant to her role as Plaintiff's part-time employee, authorized to access the computer and the data contained therein. Furthermore, Plaintiff's claim against DiMascio pursuant to R.I. Gen. Laws § 11-52-4 likewise fails because Plaintiff has provided no evidence that DiMascio possessed an intent to permanently deprive Plaintiff of its computer or data. This Court, therefore, grants Defendants' cross-motion for summary judgment relative to Count II as to DiMascio and denies Plaintiff's renewed motion for partial summary judgment as to the same.
This Court further finds that Plaintiff has demonstrated that it is entitled to judgment as a matter of law and that no genuine issues of material fact exist concerning National and Riendeau's liability under R.I. Gen. Laws § 11-52-3. The facts suggest that National and Riendeau intentionally, without authorization, and indirectly through DiMascio, accessed the computer and the data contained in the computer. Defendants have failed to meet their burden of setting forth specific facts demonstrating the existence of a genuine issue of material fact as to this issue. Accordingly, this Court grants Plaintiff's renewed motion for partial summary judgment on Count II for a violation of R.I. Gen. Laws § 11-52-3 as to Riendeau and National.
This Court finds, however, that an issue of material fact exists as to whether Cote, Silva, and Vachon accessed the computer and/or its data in violation of R.I. Gen. Laws §11-52-3. Therefore, it denies Defendants' and Plaintiff's motions as to Cote, Silva, and Vachon on Count II.
This Court further finds that Plaintiff's claim under R.I. Gen. Laws § 11-52-4 against the Defendants besides DiMascio fails. Plaintiff has provided no evidence that Defendants possessed an intent to permanently deprive Plaintiff of its computer or any data contained therein. Accordingly, this Court grants Defendants' cross-motion for summary judgment on Count II relative to Plaintiff's claim under R.I. Gen. Laws § 11-52-4 as to all Defendants in addition to DiMascio. This Court denies Plaintiff's renewed motion for partial summary judgment as to the same.
Finally, this Court concludes that an issue of material facts exists as to whether or not Plaintiff has sustained damages. Consequently, this Court denies Plaintiff's renewed motion for partial summary judgment as well as Defendants' cross-motion for summary judgment on Count II as to R.I. Gen. Laws § 11-52-6(a).
 PLAINTIFF'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT AND DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AS TO COUNT VI
Plaintiff moves for partial summary judgment as to liability against DiMascio, Riendeau, and National on Count VI for breach of fiduciary duty. Defendants move for summary judgment as to the same count, arguing, inter alia, that as competitors, National, Riendeau, and Vachon owe no fiduciary duty to Plaintiff; that DiMascio breached no duty to Plaintiff because she disclosed information that is widely available through public sources; and that Plaintiff suffered no damages proximately caused by the alleged breach.
In general, the elements of a fiduciary duty claim consist of "(1) the existence of a fiduciary duty; (2) breach of that duty; and (3) damage proximately caused by the breach." Griffin v.Fowler, 260 Ga. App. 443, 445 (Ga. App. 2003); Lyons v. MidwestGlazing, 265 F. Supp.2d 1061, 1076 (N.D. Iowa 2003). Seealso 37 Am. Jur.2d Fraud and Deceit § 31 (articulating the elements of a breach of fiduciary duty claim as "(1) the existence of a fiduciary relationship; (2) a breach of the duty owed by the fiduciary to the beneficiary; and (3) harm to the beneficiary").
"A fiduciary relation exists between two persons when one of them is under a duty to act for or to give advice for the benefit of another upon matters within the scope of the relation." Restatement (Second) Torts § 874. Moreover, "[a] `fiduciary relation' arises whenever confidence is reposed on one side, and domination and influence result on the other" or "when there is a reposing of faith, confidence and trust, and the placing of reliance by one upon the judgment and advice of the other."Lyons v. Midwest Glazing, 265 F. Supp.2d at 1076. Factors that demonstrate the existence of a fiduciary relationship include "the acting of one person for another; the having and exercising of influence over one person by another; the inequality of the parties; and the dependence of one person on another." Id.
Fiduciary relationships exist in a variety of contexts, including between lawyers and clients, guardians and wards, principals and agents, id., and "corporate directors and officers [and] the corporation they serve." Ed Peters JewelryCo., 51 F. Supp.2d at 98. Furthermore, to the extent that he or she acts as an agent for an employer, an "employee owes a fiduciary duty with respect to the subject of the agency relationship." Cahill v. Antonelli, 120 R.I. 879, 883,390 A.2d 936, 939 (1978). See also Williams v. Dominion Tech.Partners, L.L.C., 576 S.E.2d 752, 757 (Va. 2003) (stating that "[u]nder the common law, an employee, including an employee-at-will, owes a fiduciary duty of loyalty to his employer during his employment"). Pursuant to this duty, the employee must not compete with his or her employer during his or her employment. Id. Furthermore, courts consider an employee's solicitation of the employer's customers during the employee's employment as a breach of a confidential relationship. RegoDisplays, Inc. v. Fournier, 119 R.I. 469, 474-75, 379 A.2d 1098, 1101 (1977).
Where a confidential or fiduciary relationship exists, the person in whom the confidence is reposed possesses a duty to
 "exercise the utmost good faith in the transaction with due regard to the interests of the one reposing confidence, to make full and truthful disclosures of all material facts, and to refrain from abusing such confidence by obtaining any advantage to himself or herself at the expense of the confiding party." 37 Am. Jur.2d Fraud and Deceit § 31.
This Court finds that National, Riendeau, Vachon, Cote, and Silva shared no fiduciary relationship with Plaintiff. None of these parties possessed a duty to act for or to give advice for the benefit of Plaintiff. Likewise, Plaintiff did not repose confidence, faith, or trust in National or these individuals, nor did it rely upon the judgment and advice of the same. Finally, National, Riendeau, Vachon, Cote, and Silva did not exercise influence over Plaintiff, and Plaintiff did not depend on these parties. This Court, therefore, grants Defendants' motion for summary judgment on Count VI as to National, Riendeau, Vachon, Cote, and Silva and denies Plaintiff's cross-motion for partial summary judgment on the same count as to Riendeau and National.
Finally, this Court finds that issues of material fact exist as to whether Plaintiff sustained damages as a result of DiMascio's alleged breach and what information DiMascio disclosed. Consequently, this Court denies Plaintiff's cross-motion for partial summary judgment as well as Defendants' motion for summary judgment on Count VI as to DiMascio.
 CONCLUSION
Finding that DiMascio's Supplemental Affidavit clearly contradicts her earlier deposition testimony, this Court grants Plaintiff's motion to strike. Furthermore, this Court grants Defendants' motion for summary judgment as to Counts III, IV, V, VII, and VIII, but denies the motion as to Counts I and IX.
Additionally, this Court grants Defendants' cross-motion for summary judgment and denies Plaintiff's renewed motion for partial summary judgment as to all Defendants under Count II for a violation of R.I. Gen. Laws § 11-52-4; denies Defendants' cross-motion and grants Plaintiff's renewed motion as to claims under Count II against Riendeau and National for a violation of R.I. Gen. Laws § 11-52-3; grants Defendants' cross-motion and denies Plaintiff's renewed motion as to a claim against DiMascio under R.I. Gen. Laws § 11-52-3; denies Defendants' and Plaintiff's motions as to Cote, Silva, and Vachon on Count II for a violation of R.I. Gen. Laws § 11-52-3; and denies Plaintiff's renewed motion as well as Defendants' cross-motion on Count II as to R.I. Gen. Laws § 11-52-6(a).
Finally, this Court grants Defendants' motion for summary judgment on Count VI as to National, Riendeau, Vachon, Cote, and Silva, and denies Plaintiff's cross-motion for partial summary judgment as to the same. This Court denies Defendants' motion for summary judgment and Plaintiff's cross-motion for partial summary judgment on Count VI as to DiMascio.
The parties shall present an appropriate order and judgment for entry.
[1] This Court will use the terms "subcontractor" and "vendor" interchangeably.
[2] The database contained 24-hour status, contact, and service area information for some, but not all, of the vendors. (Arsenault Tr. 50.)
[3] Compare Darnell v. Target Stores, 16 F.3d 174, 177 (7th Cir. 1994) (stating that "parties cannot thwart the purpose of Rule 56 by creating issues of fact through affidavits that contradict their own depositions" and "self-serving affidavits without factual support in the record will not defeat a motion for summary judgment") with Perma Research and Dev. Co. v.Singer Co., 410 F.2d 572, 578 (2d Cir. 1969) (stating rule that "if a witness has made an affidavit and his deposition has also been taken, and the two in some way conflict, the court may not exclude the affidavit from consideration in the determination of the question whether there is any genuine issue as to any material fact").
[4] Catanese also testified, however, that Plaintiff made the decision not to work with this subcontractor. (Catanese Tr. 116.)
[5] Rhode Island General Laws § 9-1-2, entitled "Civil liability for crimes and offenses" states:
 "Whenever any person shall suffer any injury to his or her person, reputation, or estate by reason of the commission of any crime or offense, he or she may recover his or her damages for the injury in a civil action against the offender, and it shall not be any defense to such action that no criminal complaint for the crime or offense has been made; and whenever any person shall be guilty of larceny, he or she shall be liable to the owner of the money or articles taken for twice the value thereof, unless the money or articles are restored, and for the value thereof in case of restoration."
[6] In its Mem. on Mot. for Partial Summ. J., Plaintiff alleges a claim under R.I. Gen. Laws § 12-17-14, entitled "Conviction of lesser-included offense or attempt," and a claim against Riendeau for violation of R.I. Gen. Laws § 11-1-3, designated "Liability for aiding, abetting, counseling, hiring, or commanding offenses." Plaintiff failed to mention these claims when asserting its renewed motion for partial summary judgment. To the extent, however, that Plaintiff intends now to assert these claims, this Court declines to rule on them, finding that they are not properly before this Court as Plaintiff failed to allege them in its Amended Complaint.