DECISION
The instant matter arises from Plaintiff Rhode Island Resource Recovery Corporation's (RIRRC) 68-count, 520-paragraph Complaint against 23 named Defendants. Presently before this Court are: (1) Defendants Maureen Macera, John Tzitzouris, and Lynn Tzitzouris' (collectively, Macera/Tzitzourises) Super. R. Civ. P. 12(e) Motion for More Definite Statement; (2) Defendants William Wilbur and Kevin J. Wilbur's (collectively, Wilburs) Super. R. Civ. P. 12(b)(6) Motion to Dismiss, or in the alternative, Super. R. Civ. P. 12(e) Motion for *Page 2 
More Definite Statement; and (3) Defendants Pilgrim Title Insurance Company (Pilgrim), Jeffrey A. St. Sauveur, James J. Belliveau and Christopher J. Montalbano's (collectively, Pilgrim Title) Super. R. Civ. P. 12(b)(6) Motion to Dismiss.
 I Facts and Travel
RIRRC, formerly known as Rhode Island Solid Waste Management Corporation (RISWMC), is a quasi-public corporation established by legislative enactment in 1974 to own and operate the Central Landfill in Johnston, Rhode Island (Central Landfill). See
Complaint ¶ 1. In 2008-2009, the Rhode Island Bureau of Audit (Bureau) conducted an investigation of RIRRC.Id. ¶ 103-04. On September 22, 2009, the Bureau issued an audit report (Audit Report) highlighting numerous violations, breaches, and wrongful acts that allegedly occurred at RIRRC during the relevant period. Id. The instant matter is the result of the Bureau's review of RIRRC's purchase of properties adjacent to or around the Central Landfill during the years 2000 through 2005. Specifically, RIRRC alleges — based on the Audit Report — that the named Defendants, as parties to the transactions set forth below, conspired or acted in concert with former RIRRC employees and commissioners to cause RIRRC to purchase the properties at inflated prices and/or with major environmental issues.
 Macera/Tower Property
On November 10, 2000, RIRRC purchased by warranty deed approximately 36.7 acres — consisting of Plat 29 Lot 32, Plat 31 Lot 10, and Plat 44 Lot 159 — in Johnston, Rhode Island (Macera/Tower Property) from Macera/Tower Family Limited Partnership and Anthony Macera, Inc. for $6,000,000.Id. ¶¶ 29-30. Pilgrim acted as the title insurance company in this *Page 3 
transaction; Albert G. Brien and Associates and Albert G. Brien (collectively, Brien) were allegedly the sellers' real estate broker. Id. ¶¶ 31-32.
At the time of purchase, the tax-assessed value of the Macera/Tower Property was $1,404,000 for Plat 31 Lot 10 (33.5 acres out of the 36.7 acres purchased by RIRRC).Id. ¶ 34. Prior to the sale, Plat 31 Lot 10 of the Macera/Tower Property was used as the Macera Dump, which had been subject to a number of citations by the Rhode Island Department of Environmental Management (RIDEM). Id. ¶ 36. On August 19, 1999, GZA GeoEnvironmental Inc. (GZA) performed a Limited Phase II Environmental Site Assessment at the Macera Dump and observed waste materials and elevated levels of contaminants in groundwater at concentrations in excess of RIDEM's reporting criteria. Id. GZA estimated that it would cost approximately $6,750,000 to remove the on-site waste or approximately $600,000 to cap it. Id. ¶ 37.
 Macera/Tzitzouris Property
On April 29, 2002, RIRRC purchased by warranty deed approximately 67.9 acres — consisting of Plat 43 Lot 253 — in Johnston, Rhode Island (Macera/Tzitzouris Property) from the Macera/Tzitzourises[1] for $2,050,000. Id. ¶¶ 40-41. Pilgrim served as both the title insurance company and settlement agent for the sale and Brien was the sellers' broker.Id. ¶ 42-43.
In 2001, the tax-assessed value of the Macera/Tzitzouris Property was $212,400. Id. ¶ 45. Shortly before the sale, the property was assessed at $1,649,500. Id. In February 2002, the Macera/Tzitzouris Property was appraised by William E. Coyle Jr. and Associates, William E. Coyle Jr. and William E. Coyle III (collectively, Coyle) at a value of $2,135,000.Id. ¶ 46. RIRRC alleges that Coyle's appraisal, having been inappropriately based on inflated purchase *Page 4 
price comparisons, violated G.L. 1956 § 5-20.7-19 by failing to conform to professional appraisal standards. Id.
According to RIRRC, although the Macera/Tzitzouris Property was purchased to obtain cover materials for the landfill, GZA discovered that the high silt content of the soil rendered it unsuitable as fill or cover material. Id. ¶ 47. Additionally, RIRRC discovered an unrecorded and undisclosed conservation easement placed on the property prior to the sale by William R. Macera as part of a consent agreement with RIDEM. Id. ¶¶ 48-51.
 Baccarie Property
On March 10, 2003, RIRRC purchased by warranty deed approximately 10.14 acres — consisting of Plat 31 Lots 50 and 56 — in Johnston, Rhode Island (Baccarie Property) from Harry and Mary Baccarie (collectively, Baccaries) for $1,300,000.Id. ¶¶ 52-53. Pilgrim acted as both the title insurance company and settlement agent for the sale and Brien was the sellers' broker.Id. ¶¶ 54-55.
At the time of purchase, the tax-assessed value of the Baccarie Property was $223,600. Id. ¶ 56. A December 2002 appraisal (December 2002 Appraisal) for the Baccarie Property, Bac-Mac Realty Property (see infra), and Silvestri Leasing Company Property I (see infra) valued the properties at $3,000,000. Id. ¶ 57. RIRRC alleges that Coyle's December 2002 Appraisal, having been inappropriately based on inflated purchase price comparisons, violated § 5-20.7-19 by failing to conform to professional appraisal standards. Id.
Following the sale, the Baccaries were permitted to remain on the Baccarie Property rent-free until December 31, 2003.Id. ¶ 58. *Page 5 
 Bac-Mac Realty Property
On March 10, 2003, RIRRC purchased by warranty deed approximately 22,400 square feet of vacant land and a 4000 square foot building — located on Plat 31 Lot 50 — in Johnston, Rhode Island (Bac-Mac Realty Property) from Bac-Mac Realty for $400,000.Id. ¶ 59-60. Pilgrim served as both the title insurance company and settlement agent for the sale and Brien was the sellers' broker. Id. ¶¶ 61-62.
At the time of purchase, the tax-assessed value for the Bac-Mac Realty Property was $112,500. Id. ¶ 63. The December 2002 Appraisal for the Baccarie Property, Bac-Mac Realty Property, and Silvestri Leasing Company Property I (see infra) valued the properties at $3,000,000.Id. ¶ 64. RIRRC alleges that the December 2002 Appraisal, having been inappropriately based on inflated purchase price comparisons, violated § 5-20.7-19 by failing to conform to professional appraisal standards. Id.
 Silvestri Leasing Company Property I
On March 10, 2003, RIRRC purchased by warranty deed approximately 1.7 acres of land — consisting of Plat 31 Lots 7 and 54 — in Johnston, Rhode Island (Silvestri Leasing Company Property I) from Silvestri Leasing Company and Anthony Silvestri, Jr. for $1,085,000.Id. ¶¶ 65-66. Pilgrim acted as both the title insurance company and settlement agent for the sale and Brien was the sellers' broker.Id. ¶¶ 67-68.
At the time of purchase, the tax-assessed value of the Silvestri Leasing Company Property I was $245,100. Id. ¶ 69. The December 2002 Appraisal for the Baccarie Property, Bac-Mac Realty Property, and Silvestri Leasing Company Property I valued the properties at $3,000,000. Id. ¶ 70. RIRRC alleges that the December 2002 Appraisal, having been *Page 6 
inappropriately based on inflated purchase price comparisons, violated § 5-20.7-19 by failing to conform to professional appraisal standards. Id.
 Izzo Property
On September 3, 2003, RIRRC purchased by warranty deed 10.10 acres of land — consisting of Plat 31 Lot 43 — in Johnston, Rhode Island (Izzo Property) from Danyo Izzo for $2,015,000.Id. ¶¶ 71-72. Pilgrim acted as both the title insurance company and settlement agent for the sale. Id. ¶ 73.
At the time of purchase, the tax-assessed value of the Izzo Property was $390,000. Id. ¶ 74. William R. Macera held a mortgage on the property which was discharged at the closing.Id. ¶ 75. RIRRC alleges that Coyle's March 2002 appraisal — valuing the property at $1,500,000 — was inappropriately based on inflated purchase price comparisons, and therefore, violated § 5-20.7-19 by failing to conform to professional appraisal standards. Id. ¶ 76.
On December 17, 2002, a wetlands delineation, performed by GZA, revealed the presence of emergent wetlands on the site.Id. ¶ 77. According to RIRRC, Coyle indicated that the existence of wetlands would lower the property's appraised value by $1,400,000. Id.
Additionally, as a result of a December 31, 2002 Notice of Violation issued by RIDEM, on May 12, 2003, Danyo Izzo agreed, by Consent Agreement, to remove all solid waste from the Izzo Property.Id. ¶ 79. Nevertheless, a compliance inspection conducted by RIDEM after the sale, revealed that approximately 580 cubic yards of solid waste still remained on the property to be remedied by RIRRC.Id. ¶ 80.
 Coastal Atlantic Property
On July 29, 2004, RIRRC purchased by warranty deed 3.1 acres of land — consisting of Plat 31 Lots 45, 46, and 47 — in Johnston, Rhode Island (Coastal Atlantic Property) from Coastal *Page 7 
Atlantic LLC and William Wilbur (collectively, Coastal Atlantic).[2] Id. ¶¶ 81-82. The Coastal Atlantic Property was purchased "as is" for $1,475,000.Id. ¶¶ 82, 85. At the time of purchase, the tax-assessed value of the Coastal Atlantic Property was $786,800.Id. ¶ 83.
 Coastal KJB Builders Property
On July 29, 2004, RIRRC purchased by warranty deed 1.84 acres of land — consisting of Plat 31 Lots 49, 55, and 58 — in Johnston, Rhode Island (Coastal KJB Builders Property) from Kevin J. Wilbur and Coastal Corp. (collectively, Coastal KJB).[3]Id. ¶¶ 86-87. The Coastal KJB Builders Property was purchased "as is" for $1,525,000. Id. ¶¶ 87, 90. At the time of purchase, the property's tax-assessed value was $790,100.Id. ¶ 88.
 Silvestri Leasing Company Property II
On July 6, 2005, RIRRC purchased by warranty deed 6.5 acres of land — consisting of Plat 31 Lot 6 — in Johnston, Rhode Island (Silvestri Leasing Company Property II) from Silvestri for $4,000,000. Id. ¶¶ 91-92. Pilgrim served as both the title insurance company and settlement agent for the sale and Brien was the sellers' broker. Id. ¶¶ 93-94.
At the time of purchase, the tax-assessed value of the Silvestri Leasing Company Property II was $1,036,100. Id. ¶ 95. RIRRC alleges that Coyle's appraisal — indicating an appraised value of $4,700,000 — was inappropriately based on inflated purchase price comparisons, and therefore, violated § 5-20.7-19 by failing to conform to professional appraisal standards.Id. ¶ 96. *Page 8 
Under the terms of the purchase and sale agreement, Silvestri was allowed to remain on the property for five years at an annual rent of $500, and was permitted to sublease the property to six existing tenants and retain the collected rents. Id. ¶ 97.
 Lembicz Property
On October 31, 2005, RIRRC purchased by warranty deed .51 acres of land — consisting of Plat 31 Lot 57 — in Johnston, Rhode Island (Lembicz Property) for $410,000 from Gerald Lembicz.Id. ¶¶ 98-99. Pilgrim acted as both the title insurance company and settlement agent for the sale. Id. ¶ 100.
 II Standard of Review[4]
It is well settled in Rhode Island that the role of a Rule 12(e) is limited.[5] See 1 Robert B. Kent, et al.,Rhode Island Civil and AppellateProcedure § 12:15 (West 2006). However, in those instances where a court determines that a pleading is too vague and ambiguous, the court may, in its discretion, grant a motion for more definite statement under Rule 12(e). Id.; see alsoMitchell v. E-Z Way Towers, Inc.,269 F.2d 126, 130 (5th Cir. 1959) (explaining that unlike a *Page 9 
motion to dismiss for failure to state a claim, a motion for more definite statement involves the exercise of the trial justice's sound and considered discretion); Hodgson v. Virginia BaptistHosp., Inc., 482 F.2d 821, 824 (4th Cir. 1973) (emphasizing that the limited expansion of a complaint under Rule 12(e) is a matter left to the court's discretion). Under a motion for more definite statement, a court must review the pleading to ensure it is drafted in a manner that allows a defendant to "understand the nature and extent of the charges against him and to enable him to prepare generally for trial." Buck v. Keenan,1 F.R.D. 558, 559 (D.R.I. 1941). A court should grant a motion for more definite statement when the complaint, as framed, denies the defendant the ability to properly respond. Oresman v. G.D.Searle Co., 321 F. Supp. 449, 458 (D.R.I. 1971) (citingSchadler v. Reading Eagle Publ'ns, Inc.,370 F.2d 795 (3d Cir. 1967)); Mitchell,269 F.2d at 130 (affirming that under Rule 12(e) a court must determine whether the complaint is such that a party cannot reasonably be required to frame a responsive pleading). However, in those instances in which "a party wishes to secure more detailed information as to how the pleading party intends to prove his allegations[, a party] should not be permitted to utilize [Rule 12(e)] . . . but should be compelled to look to the procedures for discovery . . . which provide for obtaining such details."Id.; see also Town of HooksettSch. Dist. v. W.R. Grace Co.,617 F. Supp. 126, 135 (D.N.H. 1984) (acknowledging that while a Rule 12(e) motion is not to be used as a substitute for discovery in trial preparation, generally, a court should grant the motion where a pleading is too general).
Furthermore, while motions for more definite statement are often disfavored by courts and granted sparingly, they are potentially useful in assisting a court in "`the cumbersome task of sifting through the myriad of claims, many of which may be foreclosed by various defenses,' in a complaint that is `overly prolix or complex.'" Guilbeault v. R.J. Reynolds Tobacco Co.,1998 WL 919117, *Page 10 
at *2 (D.R.I. 1998) (quoting 2 James Wm. Moore, et al.,Moore's Federal Practice ¶ 12.36[1] (3d ed. 1998)). For this reason, "courts will occasionally order a more definite statementsua sponte, which they have the freedom to do." Id.
(citing Anderson v. Board of Trs.,77 F.3d 364, 367 (11th Cir. 1996) (noting that a court may suasponte require a more definite statement)).
 III Discussion
Under the concept of notice pleading, a pleading which sets forth a claim for relief need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief" and "a demand for judgment for the relief the pleader seeks." See
Super. R. Civ. P. 8(a). As a precursor to discovery, a complaint need not state all the possible facts or legal theories to be proven at trial. Arruda v. Sears, Roebuck Co.,273 B.R. 332, 339-40 (D.R.I. 2002); Hyatt v. Village HouseConvalescent Home, Inc., 880 A.2d 821, 824 (R.I. 2005) (affirming that "one drafting a complaint in a civil action is not required to draft the pleading with a high degree of factual specificity"). Although "defendants may prefer highly detailed factual allegations, a generalized statement of facts is adequate so long as it gives the defendant sufficient notice to file a responsive pleading."Langadinos v. American Airlines, Inc.,199 F.3d 68, 72-73 (1st Cir. 2000) (citing Conley v. Gibson,355 U.S. 41, 47-48, 78 S. Ct. 99, 102-03 (1957)).
"That is not to say, however, that the drafter of a complaint has no responsibilities with respect to providing some degree of clarity as to what is alleged." Hyatt,880 A.2d at 824. At this early stage of a litigation, due process considerations are implicated; and for that reason, courts require that "`the complaint give the opposing party fair and adequate notice of the type of claim being asserted.'" Id. (quotingButera v. Boucher, 798 A.2d 340, 353 (R.I. 2002)). As a *Page 11 
result, a plaintiff cannot rely solely on "subjective characterizations or conclusory descriptions," and the Court need not accept unsupported conclusions or interpretations of law.See Arruda, 273 B.R. at 340; see alsoWashington Legal Found. v. Massachusetts Bar Found.,993 F.2d 962, 971 (1st Cir. 1993).
Further, where, as here, the allegations against the Defendants may sound in fraud, the Court's judgment is particularly tempered, and the Court finds it appropriate to hold the Plaintiff to a heightened pleading standard. Indeed, where the allegations of a complaint contain averments of fraud or mistake, courts have followed Rule 9(b)'s particularity requirements.[6] SeePowers v. Boston Cooper Corp.,926 F.2d 109, 111 (1st Cir. 1991). Although Rule 9(b) does not require the pleading of detailed evidentiary matter, it does require identification of circumstances constituting fraud. SeeW.R. Grace Co., 617 F. Supp. at 135 (citing Trussell v.United States Underwriters, Ltd.,228 F. Supp. 757, 774 (D.C. Col. 1964) (granting motion for more definite statement where plaintiff's complaint alleged insufficient particulars or circumstances in connection with fraud count)).
What constitutes sufficient particularity depends upon the nature of the case and must be determined in light of the purposes of the rule — to give fair notice to the adverse party and to enable him to prepare his responsive pleading. See Women's Dev. Corp. v.City of Cent. Falls, 764 A.2d 151, 161 (R.I. 2001) (quoting 1 Robert B. Kent, et al., Rhode Island Civil and AppellateProcedure § 9:2 (West 2006)); see alsoFeinstein v. Resolution Trust Corp.,942 F.2d 34, 43 (1st Cir. 1991). Although neither the text of the rule, nor opinions of our Supreme Court explicitly set forth the degree of particularity required, the First Circuit, when applying Rule *Page 12 
9(b), requires a pleader to specify the time, place, and content of the alleged false or fraudulent representations.Feinstein, 942 F.2d at 42-43 (citing New England DataServs., Inc. v. Becher, 829 F.2d 286, 291-92 (1st Cir. 1987));see also Powers, 926 F.2d at 111. Additionally, when faced with claims sounding in fraud, the First Circuit has found that "allegations based on `information and belief' . . . do not satisfy the particularity requirement unless the complaint sets forth the facts on which the belief is founded." New England DataServs., Inc., 829 F.2d at 288 (citing Wayne Inv., Inc. v. GulfOil Corp., 739 F.2d 11, 13 (1st Cir. 1984)). Further, the pleading of supporting facts is necessary "even when the fraud relates to matters peculiarly within the knowledge of the opposing party." Wayne Inv., Inc., 739 F.2d at 14.[7]
 A The Macera/Tzitzourises' Motion for More DefiniteStatement
In their motion, the Macera/Tzitzourises contend that Counts X (civil conspiracy), XI (aiding and abetting breach of fiduciary duty), XII (fraud), XIII (negligent omissions or misrepresentations), XVI (breach of contract), XVII (breach of warranty deed), and XVIII (civil liability pursuant to G.L. 1956 § 9-1-2 for obtaining property by false pretenses in violation of G.L. 1956 § 11-41-4 are so vague, conclusory, and ambiguous that they are unable to effectively frame a responsive pleading. Upon a review of the pleadings, the Court agrees.
In this case, the lynchpin of the allegations against the Macera/Tzitzourises appears to concern their participation or assistance in the allegedly fraudulent and unlawful sale of the Macera/Tzitzouris Property. While the Court is mindful that only one of seven counts asserted against the Macera/Tzitzourises specifically alleges fraud, that alone is insufficient to justify the *Page 13 
vague and general nature of RIRRC's claims. Indeed, in addition to claims of fraud, courts have read Rule 9(b)'s particularity requirements to also cover claims where the heart of the allegation is grounded in fraud. See Hayduk v. Lanna,775 F.2d 441, 443 (1st Cir. 1985) (explaining that while Rule 9(b) applies most clearly to claims of fraud, the First Circuit reads the rule to expansively cover associated claims where the core allegation effectively charges fraud). Therefore, at a minimum, the Court believes that the RIRRC's claims alleging civil conspiracy, aiding and abetting breach of fiduciary duty, fraud, negligent omissions or misrepresentations, and civil liability pursuant § 9-1-2 for obtaining property by false pretenses in violation § 11-41-4, are simply an attempt to utilize alternative legal theories to recover for the same underlying fraudulent activity, and as a result, are too vague, ambiguous, and conclusory to satisfy Defendants' entitlement to due process. SeeNorth Am. Catholic Educ. Programming Found.,Inc. v. Cardinale, 567 F.3d 8, 15 (1st Cir. 2009) (finding several counts of a complaint vague and not sufficiently particular where each count reflected a different legal theory offered to create liability based on the same underlying fraudulent event).
It is clear to the Court, that with each count, Plaintiff simply restates the generalized elements necessary to set out each claim, and hence, fails to provide the Defendants with sufficient notice of the factual basis or extent of the claims against them.See Ohio-Sealy Mattress Mfg. Co. v. Kaplan,90 F.R.D. 21, 24-25 (D. Ill. 1980) (finding that a defendant was entitled to a more definite statement of the allegations against him in the complaint, when the complaint was "woefully deficient" in providing the defendant with notice of his alleged wrongful conduct). In Count X, RIRRC fails to specify any fact alleging, on a collective or individual basis, how the Macera/Tzitzourises conspired and what acts they undertook. Similarly, in Count XI, RIRRC states in a conclusory manner that the Macera/Tzitzourises *Page 14 
"assisted, aided, and abetted," but fails to allege any facts relating to how and when the Defendants, on a collective or individual basis, caused RIRRC to violate statutory procedures or prevented the disclosure of multiple conflicts of interest.
Similarly, in Counts XII, XIII, and XVIII, RIRRC fails to specify which Defendants actually made the false representations, how the representations were made, what the actual representations were, when the representations were made, and to whom at RIRRC the false representations were made. Further, in connection with the failure to disclose element of these counts, RIRRC also fails to allege the nature of the Macera/Tzitzourises' duty to speak.
Moreover, while Counts XVI and XVII do not, on their face, appear to sound in fraud, the Court is of the opinion that the same allegedly fraudulent activities likely underlie these allegations as well. For that reason, following a review of these counts, the Court finds that these claims are similarly vague and ambiguous. Not only is it unclear how, and which of, the Defendants breached the implied covenant of good faith and fair dealing, the Court is also unable to determine how any of the conclusory allegations or statements contained in the Complaint support or explain the Defendants' alleged breach of the warranty deed's covenants of seisen and quiet enjoyment. Therefore, without more, the Court finds that RIRRC has failed to sufficiently set forth claims to which the Defendants could reasonably be expected to respond.
Accordingly, the Court finds that in light of the nature of these claims, Plaintiff's general allegations of misrepresentation, non-disclosure, or false pretenses, fail to provide Defendants with adequate notice of the nature and extent of the charges against it.See Women's Dev. Corp., 764 A.2d at 161-62 (explaining that the serious nature of claims grounded in fraud justifies a heightened pleading standard); see also Feldman v.Pioneer Petroleum, Inc., 76 F.R.D. 83, 84 (W.D. Okl. 1977) (stating that a motion for more definite statement is appropriate in those *Page 15 
instances where a defendant is unable to reasonably respond because the claim is so indefinite that the defendant is unable to know whether or not it did the things charged). Therefore, under the circumstances, the Court grants the Macera/Tzitzourises' Motion for More Definite Statement.
 B The Wilburs' Motion to Dismiss, or in the Alternative, Motion for More DefiniteStatement
In its Complaint, RIRRC alleges claims of civil conspiracy, aiding and abetting breach of fiduciary duty, fraud, negligent omission or misrepresentation, and civil liability pursuant to § 9-1-2 for obtaining property by false pretenses in violation of § 11-41-4 against Coastal Atlantic and Coastal KJB. In their motion, however, the Wilburs allege that RIRRC's Complaint fails to set forth operative facts to which they, in their individual capacity, can adequately respond.
The crux of RIRRC's Complaint is that Wilburs participated and assisted in the sale of the Coastal Atlantic Property and Coastal KJB Builders Property to RIRRC at prices exceeding the tax-assessed values. As with the claims against the Macera/Tzitzourises, the Court is of the opinion that RIRRC's counts against the Wilburs (Counts XLVII-LVI) sound in fraud, and therefore, require more than merely conclusory and unsupported allegations.
First and foremost, upon a review of the relevant portions of the Complaint, the Court is unable to determine the capacity in which RIRRC seeks to impose liability on the Wilburs. In its opposition papers, RIRRC asserts that the Court should not only hold the Wilburs personally liable for their own torts against RIRRC, but should also pierce the corporate veil and impose liability on the Wilburs as "alter egos" of the corporate entities. That, however, is not clear from the Complaint. Furthermore, given the manner in which RIRRC has pled the allegations against Coastal Atlantic LLC, Coastal Corp., and the Wilburs, the Court is unable to decipher when the *Page 16 
allegations are directed at the Wilburs in their personal capacities or when they are directed at their capacities as alter egos of the corporations.
Moreover, setting aside RIRRC's argument in its opposition paper, the Court finds that the allegations in the Complaint fail to clearly set forth that RIRRC intends to seek the imposition of liability by piercing the corporate veil. See Bruno v.Criterion Holdings, Inc., 736 A.2d 99, 100 (R.I. 1999) (affirming the superior court's dismissal of a breach of contract claim where plaintiff's complaint failed to allege a potentially viable claim under the theory of piercing the corporate veil). Indeed, the Complaint neither alleges that Coastal Atlantic LLC or Coastal Corp. were so organized and controlled as to make them mere instrumentalities of the Wilburs, nor demonstrates that the Wilburs did not treat the corporations as separate and distinct entities.See U.S. v. Kayser-Roth Corp., Inc.,103 F.Supp.2d 74, 84 (D.R.I. 2000) (explaining that the corporate form may be disregarded where principals fail to treat the corporation as a separate and distinct entity by not adequately capitalizing it, failing to hold directors' and shareholders' meetings, and/or co-mingling corporate and non-corporate assets);National Hotel Assoc. v. O. Ahlborg Sons, Inc.,827 A.2d 646, 652 (R.I. 2003) (affirming that piercing the corporate veil is appropriate where there is such a unity of interest and ownership between the corporation and its owners, that their separate identities and personalities no longer exist);R B Elec. Co., Inc. v. Amco Constr. Co., Inc.,471 A.2d 1351, 1354 (R.I. 1984) (stating that a corporate entity is "disregarded and treated as an association of persons only when the facts of a particular case render it unjust and inequitable to consider the subject corporation a separate entity").
Finally, it is plainly apparent that Plaintiff has failed to set forth sufficient facts or details alleging how and when the Wilburs: (1) conspired with RIRRC employees and commissioners; (2) assisted, aided, and abetted the RIRRC employees and commissioners in breaching their *Page 17 
fiduciary duties; or (3) intentionally or negligently made false or negligent representations. Further, RIRRC has done no more than make bare assertions and generally restate the elements for each cause of action without specifying (1) how the representations were made; (2) what the actual representations were; (3) to whom at RIRRC the representations were made; or even (4) the nature of the duty owed by the Wilburs to disclose the information.
Thus, the Court finds that RIRRC's Complaint, without more, is too vague and ambiguous to enable the Wilburs to understand the nature and extent of the claims against them, and therefore, prevents them from effectively responding. See American Sheet Metal,Inc. v. EM-KAY Eng'g Co., Inc.,478 F. Supp. 809, 815 (D. Cal. 1979) (holding that a court should grant a motion for more definite statement when the "pleadings which are so vague and ambiguous that the adverse party cannot determine what their true nature is"); Pioneer Petroleum,Inc., 76 F.R.D. at 84. For that reason, the Court finds that a more definite statement is required.
 C Pilgrim Title's Motion to Dismiss[8]
RIRRC's claims against Pilgrim Title consist of: (1) civil conspiracy; (2) aiding and abetting breach of fiduciary duty; (3) fraud; (4) negligent omission or misrepresentation; and (5) civil liability pursuant to § 9-1-2 for obtaining property by false pretenses in violation of § 11-41-4. *Page 18 
These counts arise from Pilgrim Title's role as title insurance agent and/or settlement agent in connection with RIRRC's purchase of the: (1) Macera/Tower Property; (2) Macera/Tzitzouris Property; (3) Baccarie Property; (4) Bac-Mac Realty Property; (5) Silvestri Leasing Company Property I; (6) Izzo Property; (7) Silvestri Leasing Company Property II; and (8) Lembicz Property.
Once again, the crux of RIRRC's allegations against Pilgrim Title arises from its alleged participation and assistance in the sale of numerous properties to RIRRC at prices exceeding the tax-assessed values. For the reasons previously set forth, the Court is of the opinion that RIRRC's claims against Pilgrim Title are grounded in fraud, and therefore, the Court's judgment is tempered by Rule 9(b)'s particularity requirements. Consequently, upon a review of the relevant counts, the Court finds that RIRRC's allegations are of such a vague, ambiguous, and conclusory nature, that Pilgrim Title cannot reasonably be expected to frame a response.
At the outset, the parties' motion papers reveal that RIRRC's Complaint is so unclear and devoid of detail, that Pilgrim Title was unable to decipher whether RIRRC's fraudulent representation claims were premised on actual representations or concealments. Indeed, RIRRC had to to rely on its opposition papers to explain and clarify the nature and extent of its fraudulent and negligent representation claims. Given the general nature in which RIRRC has pled these claims, it is not surprising that both the Court and Pilgrim Title were unable to deduce that RIRRC was actually alleging a concealment claim.
Correspondingly, were the Court to assume that RIRRC's representations claims stem from concealment or intentional non-disclosure, the Court finds that RIRRC has not adequately specified the duty owed by Pilgrim Title to RIRRC. RIRRC's repeated assertion that "[t]hese false representations constitute a breach of duty to RIRRC" is simply insufficient to provide *Page 19 
adequate notice to Defendants as to the nature and extent of the allegations. For that reason, it would unquestionably violate Pilgrim Title's due process entitlements to require a response without first ordering a more definite statement.
Furthermore, as should be clear, the Court believes a more definite statement is appropriate where, as here, the Plaintiff's allegations sound in fraud and the RIRRC has failed to provide any factual detail as to: (1) the formation of or overt acts taken by Pilgrim Title in furtherance of the alleged conspiracy;[9] (2) actions taken by Pilgrim Title to assist, aid, and abet RIRRC employees and commissioners in breaching the fiduciary duties or Pilgrim Title's knowledge thereof; (3) the nature of the fraudulent or negligent representations; or (4) the actions "designedly" taken by Pilgrim Title to cheat, mislead, or defraud RIRRC. In view of the severity of the allegations against the Defendants, the Court is particularly unwilling to accept as fact, either RIRRC's generalized legal conclusions or its bare recitation of the elements of each claim.
Consequently, having had the occasion to review the relevant allegations of RIRRC's Complaint, the Court finds that the Complaint is too vague, general, and ambiguous for Pilgrim Title to reasonably be expected to understand the nature and extent of the charges against it and to file a responsive pleading. Therefore, for the reasons set forth herein, the Court finds that a more definite statement is appropriate under the circumstances. *Page 20 
 IV Conclusion
After due consideration of all the arguments advanced by counsel at the hearing and in their memoranda, the Court finds that RIRRC's Complaint is so vague, ambiguous, and conclusory, that it fails to provide the Macera/Tzitzourises, Wilburs, and Pilgrim Title with adequate notice of the nature and extent of the allegations against them. Consequently, the Court finds that it would be unreasonable to require those parties to file a responsive pleading at this juncture, and therefore, grants the parties' Motions for More Definite Statement.
Prevailing counsel may present an order consistent herewith which shall be settled after due notice to counsel of record.
[1] William R. Macera, the former mayor of Johnston, Rhode Island, was also a party to this transaction; however, he died in the spring of 2010. Id. ¶ 14.
[2] William Wilbur is the sole member and owner of Coastal Atlantic LLC, a foreign limited liability company registered in Delaware. See Complaint ¶ 21.
[3] Kevin J. Wilbur is the President and owner of Coastal Corp. — formerly known as Coastal KJB Builders, Inc. — a domestic corporation incorporated in Rhode Island. See
Complaint ¶ 23.
[4] Where, as here, Rhode Island's Rule 12(e) is substantially similar to Rule 12(e) of the Federal Rules of Civil Procedure, the Court will look to the Federal Rules, and interpretations thereof, for guidance. See Crowe Countryside Realty Assocs., Co.,LLC v. Novare Eng'rs, Inc., 891 A.2d 838, 840 (R.I. 2006) (looking to federal court decisions for guidance as to how to interpret a Rhode Island Rule of Civil Procedure where the federal counterpart was "substantially similar");
 Smith v. Johns-Manville Corp., 489 A.2d 336, 339 (R.I. 1985) (noting that where a federal rule and state rule of procedure are substantially similar, a court may look to federal courts for guidance or interpretation of state rule).
[5] Rule 12(e) of Super. R. Civ. P. reads in part:
 "Motion for More Definite Statement. If a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading, the party may move for a more definite statement before interposing a responsive pleading. The motion shall point out the defects complaint of and the details desired."
[6] Rule 9(b) provides: "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." Super. R. Civ. P. 9(b).
[7] While the Court need not, at this juncture, specifically pass upon whether RIRRC's allegations satisfy Rule 8 and 9's pleading requirements — in view of the Court's opinion set forth below — these standards unquestionably factor into the Court's judgment.
[8] Although Pilgrim Title's motion was framed as a motion to dismiss, the Court with its inherent power and in its discretion may, and shall, treat the motion as one for a more definite statement. See Carter v. Newland,441 F. Supp. 2d 208, 214 (D. Mass. 2006) (explaining that "when a complaint pleads a viable legal theory but is so unclear that the opposing party cannot respond to the complaint or frame an answer, a court has the option of converting, sua sponte, a motion made pursuant to [Rule 12(b)(6)] to a motion for a more definite statement under [Rule 12(e)]"); see also 2 James Wm. Moore, et al., Moore's FederalPractice ¶ 12.36[1] (3d ed. 1998) (citing Anderson v. Board ofTrs., 77 F.3d 364, 367 (11th Cir. 1996)) (noting that courts have the discretion to sua sponte order a more definite statement).
[9] While the Court is mindful that establishing the existence of an agreement may be difficult because the proof is largely in the hands of the alleged conspirator, that caveat does not exempt a plaintiff from the requirement of pleading facts from which the existence of a conspiracy reasonably may be inferred. SeeDM Research, Inc. v. College of Am. Pathologists,2 F. Supp. 2d 226, 229 (D.R.I. 1998). Simply stated, conclusory allegations of conspiracy or unlawful purpose do not satisfy the requirement that sufficient supporting facts be pled.Id. *Page 1